SEARS, ROEBUCK AND COMPANY, Appellant, *v.* 9 AVENUE-31 STREET CORPORATION et al., Respondents.

Argued March 22, 1937; decided June 1, 1937.

*Henry J. Friendly* for appellant. The holding of the courts below that the plaintiff suffered no recoverable damages from the breach of the covenant for quiet enjoyment was erroneous. (*Denison* v. *Ford,* 7 Daly, 384; *Noyes* v. *Anderson,* 1 Duer, 342; *Kinney* v. *Watts,* 14 Wend. 38; *Kelly* v. *Dutch Church of Schenectady,* 2 Hill, 105; *Matter of Strasburger,* 132 N. Y. 128; *Kimbark* v. *Waldemar Co.,* 169 App. Div. 239; 217 N. Y. 610; *Orec-chinto* v. *Chittenden,* 177 App. Div. 88; *Wagner* v. *Van Schaick Realty Co.,* 163 App. Div. 632; *Thorley* v. *Pabst Brewing Co.,* 179 Fed. Rep. 338; *Appleton* v. *Marx,* 191 N. Y. 81; *Niederstein* v. *Cusick,* 126 App. Div. 409; 195 N. Y. 594.) There was no error in the holding of the trial court that as between the plaintiff and the corporate defendant there was a breach of the covenant for quiet enjoyment. (*Matter of O'Donnell,* 240 N. Y. 99; *Schuyl-kill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Sielcken-Schwarz* v. *American Factors, Ltd.,* 265 N. Y. 239; *City of Rochester* v. *Montgomery,* 72 N. Y. 65; *Heiser* v. *Hatch,* 86 N. Y. 614; *Oceanic Steam Navigation Co.* v. *Compania Transatlantica Espanola,* 144 N. Y. 663; *Prescott* v. *Le Conte,* 83 App. Div. 482; 178 N. Y. 585; *Blair* v. *Bartlett,* 75 N. Y. 150; *Bannon* v. *Bannon,* 270 N. Y. 484; *Klasko Finance Corp.* v. *Belleaire Hotel Corp.,* 257 N. Y. 1; *Geller* v. *Flamount Realty Corp.,* 260 N. Y. 346; *Markantonis* v. *Madlan Realty Corp.,* 262 N. Y. 354.) The plaintiff should have judgment for the damages sustained from the breach of the covenant for quiet enjoyment not only against the corporate defendant but also against the individual defendant as surety on the bond. (*Adams* v. *United States Fidelity & Guaranty Co.,* 239 App. Div. 525; *Douglass* v. *Ferris,* 138 N. Y. 192; *Henricus* v. *Englert,* 137 N. Y. 488; *National Citizens' Bank* v. *Top-litz,* 178 N. Y. 464.) The courts below erred in disallowing

the item claimed by plaintiff for breach of the landlord's covenant to furnish electricity for the operation of the elevators. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Central Trust Co.* v. *West India Improvement Co.*, 144 App. Div. 560; *Stevens* v. *Amsinck*, 149 App. Div. 220; *Mortimer* v. *Bristol*, 190 App. Div. 452; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290.)

*Alexander Pfeiffer* and *Morris G. Duchin* for respondents. A covenant of quiet enjoyment can be broken only by an eviction of the tenant, either actual or constructive. To constitute a constructive eviction there must be a valid attornment to the owner of a paramount title. (*Matter of O'Donnell*, 240 N. Y. 99; *Grattan* v. *Tierney Sons, Inc.*, 226 App. Div. 811; *Boreel* v. *Lawton*, 90 N. Y. 293; *Fuller Co.* v. *Manhattan Constr. Co.*, 44 Misc. Rep. 219; *Greenwood* v. *Wetteraw*, 84 N. Y. Supp. 287.) Plaintiff's compliance with the order entered in the foreclosure action did not constitute a constructive eviction and a breach of the covenant of quiet enjoyment. (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285; *Prudence Co.* v. *160 West 73rd Street Corp.*, 235 App. Div. 543; 260 N. Y. 205; *People ex rel. Rice* v. *Graves*, 242 App. Div. 128; *Matter of O'Donnell*, 240 N. Y. 99; *Mason* v. *Lenderoth*, 88 App. Div. 38; *Markantonis* v. *Madlan Realty Corp.*, 262 N. Y. 354; *Bank of Manhattan Trust Co.* v. *2166 Broadway Corp.*, 237 App. Div. 734; *Lynch* v. *Harrer*, 146 Misc. Rep. 493; *Fong Ling* v. *Nathans*, 204 App. Div. 265; *Garrison* v. *Hutton*, 118 App. Div. 455; *Kelly* v. *Dutch Church of Schenectady*, 2 Hill, 105; *Greenby* v. *Wilcocks*, 2 Johns. 1.) By taking advantage of the illegal demand by the receiver for occupational rent, and by entering into a new lease at a lower rental with the very person who made the illegal demand, the plaintiff suffered no damage by the alleged breach of covenant of quiet enjoyment. (*Silverstein* v. *Brown*, 153 App. Div. 677; *Devine* v. *Melton*, 170 App. Div. 280.) The alleged breach of the landlord's covenant and the execution of the

new lease between plaintiff and the receiver, the person who caused such alleged breach, constituted a single transaction. Defendants were entitled to show the benefit which accrued to the plaintiff by reason thereof. (*Mayo* v. *City of Springfield*, 138 Mass. 70; *Burtraw* v. *Clark*, 103 Mich. 383; *Drinkwater* v. *Dinsmore*, 80 N. Y. 390; *Matter of O'Donnell*, 240 N. Y. 99; *E. T. C. Corp.* v. *Title Guarantee & Trust Co.*, 246 App. Div. 226; 271 N. Y. 124; *Matter of Kaufman*, 158 Misc. Rep. 102; *Matter of City of New York*, 270 N. Y. 652.) Neither the defendant-landlord nor its surety is liable for the occupational rent which was paid by plaintiff pursuant to the unlawful demand of the receiver and the erroneous order of the Appellate Division. The default of the corporate defendant in the payment of an installment of interest on a second mortgage to which plaintiff's lease was subject was not the proximate cause of plaintiff's loss. (*Lowery* v. *Western Union Tel. Co.*, 60 N. Y. 198; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47; *Hamilton* v. *McPherson*, 28 N. Y. 72; *McPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Dressler* v. *Merkel, Inc.*, 247 App. Div. 300; *Eschbach* v. *Hughes*, 7 Misc. Rep. 172; *Reporters Assn.* v. *Sun Printing & Pub. Assn.*, 186 N. Y. 437.) Under the terms of the bond, the individual defendant, as surety, is not bound by any of the prior proceedings nor by the order made directing payment of occupational rent. The surety was not a party to any of the proceedings nor did he have any notice thereof. (*Thomas* v. *Hubbell*, 15 N. Y. 405; *Adams* v. *United States Fidelity & Guaranty Co.*, 239 App. Div. 525; 264 N. Y. 550; *Prudence Co.* v. *160 West 73rd Street Corp.*, 260 N. Y. 205; *People ex rel. Rice* v. *Graves*, 242 App. Div. 128; *Slagle* v. *New Amsterdam Cas. Co.*, 243 App. Div. 79; *Frenkel & Co.* v. *L' Urbaine Fire Ins. Co.*, 225 App. Div. 332; *Bannon* v. *Bannon*, 270 N. Y. 484.) The payments made by the plaintiff to the receiver were voluntary and were made under mistake of law. Such payments are not recoverable. (*Hebron* v. *City of New York*, 78 Misc. Rep. 653; *Prudence*

Co. v. *160 West 73rd Street Corp.*, 260 N. Y. 205; *People ex rel. Rice* v. *Graves*, 242 App. Div. 128; *Novara* v. *Wyoming County*, 144 Misc. Rep. 920; *Monro-King & Gremmels Realty Corp.* v. *9 Ave.-31st Street Corp.*, 233 App. Div. 401.) The court below was justified in disallowing the item claimed by plaintiff for breach of landlord's covenant to furnish electricity for the operation of the elevators. (*Prentiss* v. *Greene*, 193 App. Div. 672.)

LEHMAN, J. In April, 1930, the corporate defendant leased to the plaintiff space of over two hundred thousand square feet in a building to be erected thereafter by the landlord. The term of the tenancy was to commence on January 15, 1931, and to continue until April 30, 1952. The annual rental was fixed at ninety-three cents per square foot and the plaintiff agreed to pay " in advance on date of actual possession " the rent from the 15th day of January, 1931, to the 31st day of December, 1931, on condition, however, that " the Landlord shall furnish the Tenant with a bond with corporate or other surety satisfactory to the Tenant for the whole amount of such prepayment."

The plaintiff moved into the leased premises on January 15, 1931. At the request of the landlord the plaintiff had on November 26, 1930, paid in advance the rental which it had agreed to pay " on the date of actual possession " and it had accepted a bond executed by the corporate defendant as principal and the defendant Natanson, its president, as surety. In the consideration hereafter of the proof adduced to support the plaintiff's cause of action against the surety it will be necessary to analyse the terms of that bond. The building was not entirely completed when the plaintiff moved in. Though the landlord had in the lease agreed to operate freight and passenger elevators and to provide steam heat for the building, the landlord failed almost from the beginning of the term to meet its obligation. The plaintiff remained in the building and paid the expense of furnishing those

services. The plaintiff also incurred some expense in completing the building in some minor details. On May 2, 1931, a receiver of the rents and profits of the building was appointed in an action brought to foreclose a second mortgage to which the lease was subject. The receiver demanded that the plaintiff attorn to him and pay to him " occupational rent " for the space occupied by the plaintiff. The plaintiff refused. Then the receiver moved, in the foreclosure action, for an order directing the plaintiff to pay to the receiver, " as rent for the reasonable use and occupation " of that space, the sum of $16,718.45 which was the amount of the monthly rent stipulated in the lease and paid in advance by the plaintiff. The plaintiff made a motion returnable at the same time and place for an order declaring that the lease was terminated by the demand of the receiver for " occupational rent " and permitting the plaintiff to surrender possession of the premises leased to it.

The motions were argued together. The justice at Special Term granted the motion of the receiver and fixed the reasonable value of the use and occupation of the leased space at the sum of $13,000 per month. He denied the motion of the plaintiff. The plaintiff appealed from both orders. The parties stipulated that the appeals " shall be consolidated and heard as one and the same appeal, and that the papers on appeal in said appeals shall be bound under one cover." The Appellate Division, on November 6, 1931, in a unanimous opinion (*Monro-King & Gremmels Realty Corp.* v. *9 Avenue-31 Street Corp.*, 233 App. Div. 401, 404), held that, though the receiver had the right to demand payment to him of the value of the use and occupation of space for which the plaintiff had paid rental in advance, such demand constituted a disaffirmance of the lease, and that the tenant then had " an option either to pay the reasonable rent or to vacate and surrender possession of the premises to the receiver." For that reason, the order of Special Term granting

the receiver's motion was modified " so as to provide that the tenant shall pay for use and occupation up to and including the date of its removal from the premises." The order denying the tenant's motion was reversed and the motion dismissed on the ground that, though the tenant has the privilege to treat the demands of the receiver " as an interference with his title and equivalent to a constructive eviction " yet it " is not entitled to a court order in this proceeding releasing it from liability under the lease." Then the plaintiff gave notice of its intention to vacate and surrender possession of the leased premises and to treat the receiver's demands as a constructive eviction. It paid to the receiver the amount fixed by the court for the use and occupation of the premises from May 2 to November 30, 1931, after deducting certain sums which the plaintiff had previously advanced to the receiver to meet the expense of furnishing heat and elevator service which the landlord was required, under the terms of the lease, to furnish. In December the plaintiff made, in addition, the required payment for use and occupation until December 31, 1931. Negotiations between the plaintiff and the receiver resulted in an agreement, subsequently approved by the court, that the receiver should execute a new lease to the tenant for the same space but for a term of five years and at a reduced rental. The lease was delivered, and thus, in spite of technical surrender, the tenant has continuously occupied the leased premises. Final judgment of foreclosure and sale was entered in April, 1933, but no sale was made under the judgment until March, 1935. The judgment and sale did not affect the new lease.

After termination of the original lease the plaintiff brought this action to recover damages caused to it by alleged breaches of covenants contained in that lease. These alleged breaches are: *First*, the failure of the landlord to complete the building in accordance with the plans and specifications, incorporated, in the lease and to furnish the services which, under the terms of the lease,

the landlord had covenanted to furnish; and *second,* a constructive eviction from the premises by demands of the receiver, constituting a repudiation of the lease by the receiver, and, in consequence, a breach of the covenant of quiet enjoyment. The defendant Natanson as surety for the landlord was made a party to the action. Both defendants filed answers containing general denials. The landlord also pleaded a counterclaim for the sum of $12,980 which plaintiff conceded at the trial and which requires no consideration upon this appeal. By stipulation of the parties the case was tried by the court without a jury. In accordance with that stipulation both parties moved for the direction of a verdict. The court thereupon directed a verdict against both defendants, " in the amount of $1,939.00 as damages incurred in the completion of the building; in the amount of $8,476.27 as damages incurred in furnishing necessary services, which sum includes electricity from April 2, 1931, to May 2, 1931, as well as the payroll of April 29, 1931." The court held, also, that the demand of the receiver for " occupational rent " constituted a breach of the covenant of quiet enjoyment contained in the ·lease; but that the plaintiff had suffered no damage thereby. The conceded counterclaim of the landlord was larger in amount than the damages awarded to the plaintiff, and judgment for the difference in favor of the landlord was entered.

The plaintiff challenges the sufficiency, in a minor particular, of the damages allowed for breach of covenants by the landlord before May 2d when the receiver was appointed in the foreclosure action. Undoubtedly the plaintiff did incur some expense for electrical current prior to April 2, 1931; but there is no competent evidence in the record which would enable the court to make more than a vague guess of its amount. The amount was, in any event, small in comparison with the remainder of the plaintiff's claim and, upon the evidence admitted, the trial judge was justified in his refusal to attempt a

dubious estimate. We proceed then to consider the serious questions of law involved in the plaintiff's claim for damages for breach of the covenant of quiet enjoyment.

By prepayment of the stipulated rental, the plaintiff had obtained the right of occupancy of the leased premises until December 31, 1931. Eviction, actual or constructive, by the landlord or by the holder of a superior title, would be a breach of the landlord's assurance of quiet enjoyment. Doubtless if the receiver of the rents had the right, through paramount title derived from the mortgage under foreclosure, to evict the plaintiff unless the plaintiff acquired a new right to occupy the leased premises by payment of "occupational rent," a demand for such rent might be treated as a constructive eviction. On the other hand, if the receiver appointed in a foreclosure action has no title superior to that of the mortgagor which would entitle him to repudiate a lease made by the mortgagor or to interfere with the quiet enjoyment of a tenant who paid the stipulated rent and carried out the stipulated covenants and conditions of the lease, then the demand for additional payment of rent could with impunity be rejected and could not possibly be considered a constructive eviction.

Here, as we have said, the order granting the receiver's motion to direct the plaintiff to pay the occupational rent was affirmed by the Appellate Division with some modifications in November, 1931. The Appellate Division relied upon a long line of cases in intermediate appellate courts in this State (Cf. *Fletcher* v. *McKeon*, 71 App. Div. 278) which sustained the right of a receiver appointed in a foreclosure action to demand and receive from an occupant of leased premises, subject to the mortgage under foreclosure, the reasonable value of their use and occupation, even though by agreement with the owner of the equity the occupant was entitled to continue in possession of the premises upon other and less onerous conditions. Two months before that decision of the

Appellate Division in the foreclosure action, this court, in *Klasko Finance Corp.* v. *Belleaire Hotel Corp.* (257 N. Y. 1, opinion by CARDOZO, Ch. J.) had said that, in a case where the question was squarely presented, the court might withhold its " assent to the contention * * * that, in the absence of fraud, the lease may be disregarded until terminated by a sale under a judgment of foreclosure " (p. 5.) Apparently the significance of that warning was not immediately apparent, but the decision of the Appellate Division, directing this plaintiff to pay occupational rent to the receiver (*Monro-King & Gremmels Realty Co.* v. *9 Avenue-31 Street Corp., supra*), is, it appears, the last case in which an appellate court directed a payment greater than the stipulated rental, by a tenant to a receiver. In June, 1932, the same Appellate Division construed the warning of this court in the *Klasko Case* (*supra*) as an indication of disapproval (*Prudence Co.* v. *160 W. 73d St. Corp.*, 235 App. Div. 543), and accordingly denied a similar motion made by a receiver, and this court affirmed that decision (260 N. Y. 205) and expressly disapproved the decision in *Monro-King & Gremmels Realty Co.* v. *9 Avenue-31 Street Corp.* There we said: " Until the lien of the mortgage is foreclosed the mortgagee has no paramount title which would justify eviction of the occupants or abrogation of the agreements " (p. 212). Thus, in the foreclosure action to which the plaintiff was a party the court below decided that the mortgagee or the receiver had paramount title which would justify eviction of the plaintiff, and, in a subsequent case, between other parties, this court said that decision was erroneous and that the mortgagee or receiver did not have such paramount title. By decision, then, which we have said was erroneous, the plaintiff has been compelled to pay to the receiver, for the benefit of the mortgagee, " occupational rent " at the rate of $13,000 per month to which the mortgagee was not entitled, under the rules of law subsequently authoritatively formulated by this court. As between the plaintiff and the receiver

the decision that the mortgagee had paramount title which would justify eviction of the plaintiff unless he complied with the demand of the receiver, is final and conclusive, though that decision would certainly have been different if the rules of law formulated thereafter by this court in *Prudence Co.* v. *160 W. 73d St. Corp.* (*supra*) had been applied. The problem presented upon this appeal is whether in subsequent litigation between the plaintiff and the landlord, and the surety for the landlord, in which the plaintiff asserts an eviction by paramount title, the rights of the parties are to be measured by the rule of law that, until foreclosure, a mortgagee has no paramount title which justified the eviction of a tenant entitled under the terms of a lease made by the mortgagor to quiet enjoyment of the leased premises, or are to be measured by the earlier determination of the courts below, in litigation to which the plaintiff was a party, that the mortgagee of the particular premises leased to the plaintiff did have such paramount title and did in fact make a demand for rental which might be treated as a constructive eviction.

A decision of a court of competent jurisdiction determines conclusively the questions of law and of fact necessarily involved in the dispute between the parties to the litigation. It does not conclusively determine anything else. Though the determination of the question of law involved in that litigation may dictate a similar conclusion in litigation between other parties where similar questions are involved, yet such parties may still challenge the correctness of the original decision and the court may refuse to follow it. True, inconsistent decisions rendered in disregard of the principle of *stare decisis* tend to make the law uncertain and unstable. A final appellate court may hesitate to disregard a precedent. It is free to do so when convinced that its earlier determination is unsound. Though, in such case, we speak of " overruling " a previous decision, that is a figure of speech which is not entirely accurate. We

cannot destroy or diminish the legal effect of the earlier decision. It remains as between the parties a conclusive determination of the questions both of law and fact there litigated. We can refuse to follow it as a precedent when in litigation between other parties similar questions of law are presented. Thus a decision of this court " overruling " a previous decision is not, at least in theory, a retrospective change of the law; it is merely a reformulation of the general rules of law which we deem applicable in a particular situation. (Cf. *People ex rel. Rice* v. *Graves*, 242 App. Div. 128; affd., 270 N. Y. 498.)

Here, indeed, we are not concerned with the effect of a decision which " overrules " an earlier decision of this court or revises an earlier formulation by it of a general rule of law. The questions of law presented in the *Prudence* case had not previously been presented here. We disapproved a long-continued practice in foreclosure proceedings, founded, as we believed, upon erroneous decisions of intermediate appellate courts. The rules formulated in those decisions were, as we held, incorrect statements of the law as it existed when the decisions were rendered. This court might have reversed those decisions if they had been brought here for review. In rejecting the principles underlying these decisions, we were not disregarding the principle of *stare decisis*. We were attempting to settle a question of law which until then had not been presented or determined by the final tribunal of the State.

None the less, it must be remembered that we did not and could not change the conclusive effect of the earlier decisions of the intermediate appellate court which had not been brought up here for review, including the order of the Appellate Division which directed this plaintiff to pay " occupational rent " to the receiver so long as the plaintiff continued to occupy the leased premises. That order was a decision, even though we may assume that

it was erroneous, by a court of competent jurisdiction. Though it was not a final determination of the foreclosure action and, therefore, not appealable to this court except by permission of the Appellate Division, it was intended to be final determination of the questions necessarily presented upon the interlocutory motion made by the receiver, viz., whether the mortgagee even before judgment of foreclosure had a title paramount to that of the mortgagor who had leased the premises to the plaintiff and whether by virtue of such title the receiver appointed in the foreclosure action was justified in insisting upon payment of occupational rent in disregard of the agreement of the mortgagor. It cannot be said that the court lacked jurisdiction to determine those questions, even though, as we have said in the *Prudence* case, the court would have no " power " to direct the tenant to make such payment to the receiver unless it determined that the receiver had such paramount title. That determination, though made upon an interlocutory motion, was binding upon the parties to the motion. It was not a tentative decision but was intended to fix rights. (*Bannon* v. *Bannon*, 270 N. Y. 484.) It was binding upon any persons who were parties to the application made by the receiver. (*Markantonis* v. *Madlan Realty Corp.*, 262 N. Y. 354.)

The landlord was a party to the foreclosure action. He was not orginally a party to the receiver's application to compel the plaintiff to pay occupational rent. He was a party to the countermotion made by the plaintiff for an adjudication that the demands of the receiver constituted constructive eviction. As we have said, the motions were returnable at the same time and place. They were argued together. They involved questions so inextricably intertwined that neither motion could properly be granted unless the court held that the receiver was acting in vindication of a paramount title of the mortgagee, and neither motion could properly be denied if the mortgagee had such paramount title. The appeals

were consolidated and the landlord had full opportunity both at Special Term and in the Appellate Division to be heard upon every question which might affect his rights. When by consent of the parties the motion and countermotion were argued and determined together, the fact that in form the landlord was, originally, not a party to the receiver's motion becomes of no consequence. The two motions were treated as a single motion and to that single motion the landlord was a party and is bound by the decision there rendered. Because it was a party, the landlord may not challenge the correctness of the adjudication there made that even before judgment of foreclosure the receiver appointed in the foreclosure action derives from the mortgage a title paramount to that of the mortgagee and those claiming through or under the mortgagee, which justifies the receiver in evicting a tenant of the mortgagee unless the tenant pays to the receiver the reasonable value of the use and occupation of the leased space. In spite of the contrary decision by this court in the *Prudence Case (supra)*, it has been conclusively established then, at least as against the landlord, that the demand of the receiver may be regarded as a constructive eviction by paramount title. We shall consider later whether that has been established conclusively also against the defendant Natanson who was not a party to the foreclosure suit.

A constructive eviction by superior title constitutes, of course, a breach of the landlord's covenant of quiet enjoyment. In this State, a tenant who has not paid rent in advance may, ordinarily, recover only nominal damages in an action brought upon such eviction against the landlord. (*Thorley* v. *Pabst Brewing Co.*, 179 Fed. Rep. 338.) In cases where the breach of the covenant of quiet enjoyment results from fraud or other fault of the landlord, the evicted tenant may, it is true, recover the value of the unexpired term less the rents reserved. (*Mack* v. *Patchin*, 42 N. Y. 167.) " But the general rule is, in

the absence of fault in the lessor, that the lessee can recover only such rent as he has advanced, and such mesne profits as he is liable to pay over " (p. 132). (*Matter of Strasburger*, 132 N. Y. 128.) In the instant case the plaintiff paid in advance to its landlord rental at the rate of over $16,000 per month until December 31, 1931. The plaintiff now urges that on this action it may recover at least the amount of the prepaid rental for the unexpired period during which the landlord failed to furnish in return the stipulated right of occupancy and quiet enjoyment. The plaintiff did not, however, in its complaint seek a recovery of moneys had and received by the landlord for which the landlord failed to furnish the stipulated consideration. It sought, as *damages* for breach of covenant, the recovery of the lesser amount which it was compelled to pay to the receiver for the right to continue in occupation of the leased premises until the end of the period for which it has paid rental in advance.

The rule enunciated in *Matter of Strasburger* (*supra*), that upon eviction by superior title a tenant may recover " *only* such rent as he has advanced," is intended as a limitation upon the damages which would otherwise be recoverable from a landlord. (Cf. *Denison* v. *Ford*, 7 Daly, 384.) It should not be extended to permit recovery as *damages* for the breach of a covenant of quiet enjoyment, the full amount of the rental paid in advance, where in fact the damages suffered by the tenant are *less* than such rental. We need not now decide whether the tenant, in an action for money had and received, based upon failure of consideration, might recover the prepaid rental without other proof of damages. That is not the case here. In this case, as we have said, the action is for damages; the plaintiff pleaded and attempted to prove the damages it claimed and the trial court found that under the evidence it appeared that the tenant suffered no damages. The question here is whether the evidence sustains that conclusion.

The amount which the tenant paid for "occupational rent" until December 13, 1931, was fixed by the court and not by the parties, as the value of the use and occupation of the leased premises. Regardless of the consent of the receiver, the tenant had the right to continue in quiet enjoyment of the leased premises upon payment of the amount so fixed. That right was derived from the lease, and there was no claim by the receiver and no adjudication by the court that before judgment of foreclosure a receiver might interfere with the right of a tenant to continue to occupy premises leased to him by the mortgagor, *provided* the tenant paid to the receiver the value of the use and occupation of the property. The "paramount title" which the court held, in that case, was derived by the receiver from the mortgage, extended no further. Both actual interference by the receiver and his supposed right of interference as defined in the applicable decisions of the intermediate appellate courts were so limited. Neither in theory nor in fact could the damages arising from such interference or constructive eviction be greater than the amount which under the decision of the court would insure to the tenant a continued right of possession. If the rental paid in advance was less than the amount fixed by the court as the value of the use and occupation, recovery of damages might be limited to the prepaid rental. If no rental was paid in advance there might be no recovery; but for the period where rent had been paid in advance, the amount paid under order of the court for use and occupation would accurately measure the damages and, to the extent of the rent paid, could be recovered in an action against the landlord. The payment of the amount so fixed by the court may not be treated as voluntary because the tenant failed to apply for leave to appeal from the order of the Appellate Division to this court, and the damages are those which naturally flow from an eviction by superior title.

It does not appear that the courts below decided otherwise, though they refused to allow any recovery in this case for the constructive eviction. The reason assigned by the trial court for that refusal is that the damage caused to the tenant by compulsion to pay " occupational rent " during the period for which the stipulated rent was paid in full was more than offset by the benefit derived by the tenant from the new lease for a shorter term and at a lower rental, thereafter executed by the receiver. We hold that the possible or even probable benefit from a lease made with the receiver, who has chosen to repudiate the lease made by the original landlord, cannot be offset against the damages which flowed from the breach of the landlord's covenant of quiet enjoyment.

When the tenant elected to treat the receiver's demand as a constructive eviction, as the tenant was free to do, under the terms of the order, made upon the receiver's application, which directed the tenant to pay to the receiver the amount, fixed by the court, while the tenant continued in possession of the premises, the tenant no longer had any rights or obligations under the original lease. That lease was definitely terminated by the constructive eviction. After removal the tenant lost the benefit of the stipulated right to occupy the leased premises during the unexpired term, but was relieved of the burden of paying the rent reserved for the same term. If the value of the unexpired term was greater than the reserved rent, the plaintiff was damaged accordingly, but, as we have pointed out, such damages could not be recovered from the landlord. If the value of the unexpired term was less, the plaintiff might be benefited by release from the obligation to pay rent, but certainly the plaintiff should not be required to account to the landlord for such possible benefit even as an offset to damages suffered through the breach of the landlord's covenant of quiet enjoyment during the period for which rent was paid in advance.

The situation is not changed by the fact that before actual removal the plaintiff made a new lease with the receiver. It is plain that if the tenant had leased similar space elsewhere upon more advantageous terms, no claim could have been made that the resultant benefit could be offset against the damages caused by being compelled to pay twice for the space leased from the corporate defendant. The tenant chose instead the space which it orginally leased from the corporate defendant. The tenant was as free to bargain with the receiver for that space as he would have been to bargain for other space with a third party. The rights, obtained by such bargain, to continue occupancy of the space where the plaintiff was conducting its business are not attributable to the original lease, and even if more advantageous to the tenant than the rights of which the tenant was deprived by termination of the original lease, the resultant benefit would not diminish the other damages caused by such termination. Moreover, it is not possible to determine whether a lease for a short period at a reduced rental is more valuable than a lease for a longer term at the higher rental. For these reasons the plaintiff is entitled to recover from its landlord the payment made to the receiver because the receiver asserted a title which the court held was paramount to that of the landlord.

The question is different as to the defendant Natanson, who, as surety, gave to the plaintiff a bond intended to insure the plaintiff against any loss it might suffer through prepayment of rent due. Since the surety was not a party to the foreclosure action or any motion made in that action, no decision made by the court in that action would be binding upon the surety unless the surety agreed in the bond to abide by such decision. In this case the bond bound the surety, among other things, to pay or cause to be paid to the obligee " * * * any and all sums which Obligee, its successors or assigns, as tenant under said lease, shall be entitled to receive from

Principal as Landlord, pursuant to the provisions of said lease, by reason of the breach by Principal, as Landlord, of any of the covenants in said lease on the part of Principal, as Landlord, to be performed during the period from January 15th, 1931 to December 31st, 1931, both inclusive." The problem presented here is whether, by promise to pay " the sums which Obligee  *  *  *  shall be entitled to receive from Principal, as Landlord, *  *  *  by reason of the breach  *  *  *  of any of the covenants in said lease," the surety bound himself to pay any sums which the tenant established he was entitled to receive from the landlord in litigation with the landlord to which the surety was not a party, or whether  the surety had the right to require that the breach of covenant " entitling " the tenant to receive moneys from the landlord be established in litigation to which the surety was a party.

Ordinarily, recovery may be had against a surety upon a bond of indemnity only where default or wrong by the principal is shown in an action to which the surety is a party.  A recovery against the principal in an action to which the surety is not a party is not conclusive upon the surety, unless the surety " expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result." (*Bridgeport Ins. Co.* v. *Wilson*, 34 N. Y. 275, 280.)  Such a stipulation is ordinarily a part of a court bond.  It may not be read into a bond of indemnity by " inference or argument." So this court has said.  " Unless the language of his contract expressly and explicitly contemplates a submission to the judgment and shows that the surety must have intended to be bound by it, such rigorous liability is not to be imposed upon him by arguing it from general words having another purpose and a different aim, and so understood by him." (*Thomson* v. *MacGregor*, 81 N. Y. 592, 597.)  Nothing said or decided in subsequent cases in this State has weakened the rule that in the absence of

unequivocal language to the contrary, a surety has a right to litigate the primary liability of the principal even though such liability has been conclusively established against the principal in litigation to which the surety was not a party. Here the liability of the principal was established upon the authority of decisions by intermediate appellate courts which did not correctly formulate the law. The tenant may enforce the liability so established against the principal. The surety is free to challenge the correctness of that decision, and when so challenged, liability must be determined by the rules of law laid down by this court in the *Prudence* case. Under those rules the plaintiff fails to show that there has been any breach of covenant which would entitle the tenant to receive moneys from the landlord. The landlord pays because the adjudication that there has been a breach of the covenant of quiet enjoyment is binding upon him and is unreversed. The surety is not under any obligation to pay because that adjudication is not binding upon him; and in the instant litigation, to which the surety is a party, it appears that there has in fact been no breach of covenant by the principal.

The plaintiff maintains that, even assuming that there has been no breach of the covenant of quiet enjoyment which entitled it to receive from the landlord payment of any sums of money, there has been failure by the landlord to furnish heat and elevator service as required by the lease, and that the plaintiff may recover from the surety at least its damages for that, including all expenses incurred or advances made by the tenant in order to obtain such service. The tenant has been awarded recovery of all properly proven expenses incurred prior to the appointment of the receiver and demand for occupational rent. The tenant, as we have said, treated the demand as a constructive eviction and attorned to the receiver. As between the tenant and the landlord, the tenant might safely do so under the decision of the

court in the foreclosure action to which the landlord was a party. The original lease was then effectively terminated. That is true whether the receiver's demand constituted a constructive eviction or not. The only difference is that if there was a constructive eviction, the landlord is liable for the consequent breach of the covenant of quiet enjoyment; otherwise there was no such breach. In either case, after termination of the lease the landlord was under no further liability to furnish service to the tenant, and the surety cannot be held liable for the landlord's failure to do that which the landlord was under no further obligation to do.

The judgments should be modified by allowing the plaintiff damages against the corporate defendant for occupational rent paid to the receiver from May 2d to December 31, 1931, and as so modified affirmed, with costs in all courts to the appellant against the corporate defendant.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.