Shanley N. Egeth, J.
This is a nonpayment proceeding. Immediately prior to the trial the landlord’s petition was amended by consent to increase the rent delinquency claimed to $2,475. Simultaneously, by stipulation, tenant’s answer was amended to increase tenant’s first counterclaim for replacement óf windows from $101.12 to $111, to . add an affirmative defense of breach of covenant of quiet enjoyment, and a second counterclaim for $20,000 as damages resulting from a breach of said covenant.
Evidence received at trial established that the parties entered into a two-year loft lease on February 1, 1972, covering 20,000 feet (the entire third floor), in a Greenwich Village industrial building at a rental of $3,300 per annum ($275 per month). The lease authorizes use of the premises for “ Office, library and meeting room for seminars, libraries.” Paragraph 20. of the lease obligates the landlord only for express representations contained therein, and recites that the tenant has inspected the leased premises, and accepts them “ as is.” A rider in the lease itemizes certain specific work to be done by the landlord, but omits any obligation to replace blackened windows. Thereafter, the landlord agreed to pay $83.25 as a partial reimbursement of the cost of installing new windows.
It was further established at trial that: the building was tenanted by manufacturing and printing firms, but the owner desired to gradually convert the use thereof to offices and studios; there had been many printing tenants in the building including the one directly above the leased premises; two different partners of the tenant visited and inspected the building upon a number of occasions prior to execution of the lease; the tenant was offered space on other floors before choosing the leased, space; one month after entering into possession in mid-April, the tenant complained of intense noise and vibrations caused by the operation of a large printing press on the floor above; unsuccessful attempts were thereafter made to muffle the sound, or work out an agreement with the tenant *107 above to operate the presses at mutually convenient times; and the tenant ceased payment of all rent after June.
Tenant presented testimony that the noise in the premises was so great as to interfere with conversation and impede lectures or seminars on three to three and a half days of each week, while other proof was offered that conversation was possible in the office of the printing firm involved, or in the landlord’s office adjacent to the printing plant. An acoustical engineer, who testified as tenant’s witness, stated that on the one day of his inspection the noise from the presses breached no code provision or city regulation; that the noise level in tenant’s library was within the normally acceptable range for a loft, but not for a library; and that the noise condition could be cured by the installation of a new floor between the printing plant and the floor of tenant’s premises at a cost of about $20,000 (more than three times the total rent due throughout the lease term).
No evidence was offered as to: specific monetary damage sustained by the tenant due to the noise condition; any fault or conduct by the landlord which caused or continued the noise condition; or any abandonment or relinquishment of use of all or any part of the leased space by the tenant.
Accordingly, this tenant has not established a breach of covenant of quiet enjoyment, a constructive eviction, or an actual partial eviction. The affirmative defense and counterclaim based thereon must therefore be stricken, and the landlord is entitled to rent.
“An implied covenant, or an express covenant * * * for quiet enjoyment, in effect is an agreement on the part of a landlord that for the period of the demised term the tenant shall not be disturbed in his quiet enjoyment of the demised premises by any wrongful act of the landlord * # * or by the enforcement of any title superior to that of the landlord.” (Rasch, N. Y. Landlord and Tenant, § 890). “As a general rule, an eviction, actual or constructive, is necessary to constitute a breach of a covenant for quiet enjoyment.” (Rasch, N. Y. Landlord and Tenant, § 893; Sears Roebuck & Co. v. 9 Ave. 31-St. Corp., 274 N. Y. 388, 398; McQuade v. Carvel Stores of Penn., 8 Misc 2d 659; Mouse of Chan v. Dyckman, 14 Misc 2d 595). When breach of this covenant is alleged as a defense to a rent action, or used as a basis for a damage claim, it is the act of the landlord which must preclude the tenant from beneficial enjoyment of his leasehold. (Barash v. Pennsylvania Term. Real Estate Corp., 26 N Y 2d 77; Hornstein *108 Co. v. Columbia Pictures Corp., 4 N Y 2d 117; Diehl v. Watson, 89 App. Div. 445; Self Serv. Furniture Fair v. 450 Realty Corp., 114 N. Y. S. 2d 774.)
The act of the landlord must cause an actual eviction and physical expulsion of the tenant from all or part of the leasehold or such material deprivation of the beneficial use and enjoyment of possession in all or a significant part of the leasehold as to justify the tenant’s abandonment thereof. In an actual partial eviction, the tenant may continue in possession of a part of the leasehold while a constructive eviction requires a surrender and abandonment of possession. (Barash v. Pennsylvania Term. Real Estate Corp., 26 N Y 2d 77, supra; Pasqua v. DeMarchi, 31 A D 2d 781; 300 West 56th St. Corp. v. Kelly, 153 N. Y. S. 2d 978; Malek v. Perdina, 58 Misc 2d 960; Mosbacher v. Cleaners Enterprises, 19 Misc 2d 624; Matter of Siegel v. National Bead & Stone Co., 37 Misc 2d 297.) (But, cf., East Haven Assoc. v. Gurian, 64 Misc 2d 276 [Civ. Ct., N. Y. County], [new doctrine of partial constructive eviction].)
In this ease, there was no actual ouster from all or any part of the leased premises. The tenant has not vacated or abandoned possession of all or any part of the leased premises due to any claimed landlord’s act of interference, or deprivation of the beneficial use thereof. The tenant has not even established total nonuse or abandonment of possession of any specific part of the leasehold which might bring it within the ambit of the doctrine of partial constructive eviction enunciated in the East Haven case (supra).
Of even greater importance, and fatal to the tenant’s case, the condition complained of (noise) was not caused by the landlord’s affirmative act, or omission to act under circumstances where the landlord had an obligation to act.
Although noise in residential premises has been held to justify a constructive eviction (55th St. Realty Corp. v. Socolow, 36 N. Y. S. 2d 12; Polk Arms v. Kohler, 144 Misc. 326). such condition must be caused by the act or omission to act of the landlord in order to justify any type of eviction which would constitute a breach of a covenant of quiet enjoyment.
This tenant accepted a leasehold at an advantageously low rental in an industrial building containing existing printing establishments. The tenant knew or should have known of the printing plant uses within the- building. The. tenant may not coniplain that predictible noise from such pre-existing printing plants can constitute a basis for a constructive eviction from its leasehold.
*109 The condition was not caused by the landlord, nor could the landlord do anything to abate or ameliorate it without being guilty of a breach of his lease obligation to another prior tenant, or without expending an unreasonable sum of money, exceeding three times this tenant’s total rent for the full term of its lease. The law does not require the landlord to so do.
Judgment for landlord for $2,391.75 ($2,475 rent due the landlord, less a setoff of $83.25 awarded to the tenant on its first counterclaim). Tenant’s second counterclaim is dismissed. Final order for landlord, 10 days’ stay.