■ QUANTUM CORPORATE FUNDING LTD., Appellant, v L.P.G. ASSOCIATES, INC., Respondent, et al., Defendants. [667 NYS2d 702] —Order, Supreme Court, New York County (Carol Huff, J.), entered December 16, 1996, which, *inter alia,* denied plaintiff-appellant's motion seeking (1) summary judgment against defendant-respondent L.P.G. Associates, Inc., and (2) judgment as to liability against the individual defendant, Dominick De-Vito, upon his default in appearance and which granted defendant-respondent's cross motion for summary judgment dismissing the complaint, unanimously reversed, to the extent appealed from as limited by the briefs, on the law, with costs, the motion granted to the extent of awarding plaintiff summary judgment against defendant L.P.G. Associates in the principal sum of $124,720.40, and awarding plaintiff judgment as to liability against the individual defendant, Dominick De-Vito, and directing inquest as to damages, and the cross motion denied. The Clerk is directed to enter judgment accordingly.

Defendant L.P.G. Associates (LPG) was engaged as general contractor to rehabilitate apartments at a public housing project in Bronx County. DDV Construction, Inc. (DDV) undertook

to perform certain work and to supply materials for the project as a subcontractor to LPG. DDV made a series of assignments of its accounts receivable under the contract to plaintiff Quantum Corporate Funding Ltd. (Quantum). Prior to the advancement of funds to DDV, Quantum notified LPG of each assignment and solicited its written guarantee that the work had been performed by DDV, that the amount represented by the underlying invoice was therefore due and payable and that there was no set-off or claim against payment in excess of 20% of the invoice amount. Defendant LPG acknowledged and returned each estoppel certificate to plaintiff, which then advanced funds to DDV. Quantum duly recorded its assignment of interest, and defendant Dominick DeVito, president of DDV, personally guaranteed each assignment. Defendant Universal Bonding Insurance Company issued labor and material payment bonds as surety to LPG.

At issue on this appeal is an advancement on an invoice in the amount of $180,900.50. DDV has repaid only $20,000 of this sum, leaving a balance due of $160,900.50. After Quantum had recorded the assignment and DDV's partial payment, LPG learned that DDV had outstanding financial obligations to its subcontractors and suppliers, which consequently threatened to file liens against the construction project. To obviate any threat to its timely completion of the work under its contract with the owner, LPG paid the sum remaining due to Quantum under the assignment directly to DDV's subcontractors and suppliers.

Quantum brought this action to recover the amount remaining due under the invoice. In its defense, LPG contends that it satisfied its obligations under its contract with DDV by making payment of the amount it owed to DDV's subcontractors and suppliers. LPG further argues that the obligations imposed upon it as a contractor by article 3-A of the Lien Law are superior to the claim advanced by Quantum, as factor, under its assignment from the subcontractor, DDV.

Supreme Court found that the assignments from DDV to Quantum are valid. In so doing, the court rejected LPG's contention that the premises being improved belong to the City of New York, thus subjecting them to the prohibition against assignment contained in General Municipal Law § 109 (2) and to the filing requirement of Lien Law § 16. Supreme Court, however, also decided that LPG's obligation to make payment to Quantum was satisfied by its payment to DDV's subcontractors and suppliers.

We agree that the assignments are valid and join in Supreme

Court's rejection of LPG's contention that, as a purported improvement upon public property, assignment is restricted. However, we disagree with the conclusion that defendant-respondent has satisfied its financial obligations to plaintiff by discharging DDV's obligations to its subcontractors and suppliers under the Lien Law.

It is defendant LPG's position that it acted under a statutory duty imposed by Lien Law §§ 70 and 71 in making payment to DDV's subcontractors and suppliers. It contends that failure to make the payment would constitute a diversion of trust assets within the contemplation of Lien Law article 3-A. Therefore, defendant argues, "these payments completely satisfied LPG's financial obligation to DDV, with the result that Quantum may not assert any cause of action against LPG."

LPG's argument is not devoid of merit, for while the extent of an owner's responsibility under article 3-A of the Lien Law is settled, the corresponding responsibility of a contractor is open to interpretation. Pursuant to Lien Law § 71 (3) (a), the claims for which an owner is responsible as a statutory trustee are "claims of contractors, subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, for which the owner is obligated". The basis of such liability is an existing obligation, such as one imposed by contract or as the result of a mechanic's lien. "Merely supplying material which is used in the project cannot suffice to impose obligations on the owner under the statute" (*Matter of Abjen Props. v Crystal Run Sand & Gravel*, 168 AD2d 783, 784; *Innovative Drywall v Crown Plastering Corp.*, 224 AD2d 664, *lv dismissed* 88 NY2d 1016). Therefore, while a subcontractor that has not received payment for work performed or materials supplied to a contractor "is clearly a beneficiary of the trust assets received by the contractor" (*Onondaga Commercial Dry Wall Corp. v Sylvan Glen Co.*, 26 AD2d 130, 133, *affd* 21 NY2d 739 *for reasons stated below*), the statute does not make the owner "a guarantor of payment to the creditors of the contractor" (*supra,* at 133).

Less clear is whether the contractor's statutory obligation is limited to those in privity with the contractor or whether its obligation extends to a subcontractor's creditors. Pursuant to Lien Law § 71 (3) (b), the claims for which a contractor is responsible as a trustee are "claims arising at any time for payments for which the trustee is authorized to use trust funds", which include "payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen" (Lien Law § 71 [2] [a]). The statute is equivocal as to whether

such claims are restricted to those by the contractor's own suppliers or whether they are intended to encompass claims by the suppliers to a subcontractor. The New York cases that have considered the question conclude that the class of claims is restricted. *Engineered Air v LeCesse Bros. Contr.* (192 AD2d 1053, 1055 [concurring mem by Boomer, J.]) states, "There was no legislative intent to make an owner a guarantor of payment to the creditors of his contractor [citing *Onondaga Commercial Dry Wall Corp. v Sylvan Glen Co.*, *supra*, at 133], and I can find no legislative intent to make a contractor a guarantor of payment to the creditors of his subcontractor." In *Teman Bros. v New York Plumbers' Specialties Co.* (109 Misc 2d 197, 200), the court noted that the Legislature employed the statutory trust as a device to prevent moneys payable to subcontractors and suppliers from being diverted to other uses (Lien Law § 70), "with the funds provided by financing being made trust funds in the hands of the owner, funds paid or payable by the owner to the general contractor being made trust funds in the contractor's hands and funds paid or payable by the contractor to a subcontractor being made trust funds in the subcontractor's hands" (citing *Aquilino v United States*, 10 NY2d 271, 275; 1959 Report of NY L Rev Commn, at 214). It is questionable whether, in the absence of a contractual relationship that imposes an obligation on the part of LPG, as contractor, to make payment to DDV's suppliers, LPG can be considered a statutory trustee with respect to the amount sought to be recovered by Quantum.

For the purposes of this matter, however, it is not necessary to decide the issue. The operative question is not whether the contractor is authorized to make payment to the subcontractor's creditors out of trust assets but whether, having made such disbursement, the contractor may set up payment as a defense to an action brought by the subcontractor's lender, whose claim to the funds is based upon a duly recorded assignment. In this regard, LPG's obligation to Quantum is distinct from any obligation owed by DDV to its subcontractors and suppliers. LPG acknowledged that "all payments on the captioned invoices are to be made only to Quantum Corporate Funding, Ltd." LPG further gave its assurance to Quantum that "there will be no claims against the funds paid" under any of the subject invoices. The nature of LPG's obligation to Quantum is therefore contractual, and its assurance gives rise to an estoppel predicated upon the factor's reliance on that assurance in purchasing the assignment from DDV (*Hammelburger v Foursome Inn Corp.*, 54 NY2d 580, 587-588 [estoppel in pais]). Unless (1) there is an equitable basis to invalidate the certificate,

such as duress, or (2) the assignee took with knowledge of some defect in the manner in which the certificate was obtained (*supra,* at 584), neither of which is claimed in this matter, LPG is bound to honor its representation, and the Court will give it effect (*Eaton v Laurel Delicatessen Corp.*, 5 AD2d 590, 592, *affd* 5 NY2d 1029 [an estoppel certificate guaranteeing the validity of an underlying debt is enforceable, even in light of a valid defense]).

As the result of making payment to DDV's suppliers, LPG is subrogated to their claims. However, in the absence of complicity in the diversion of trust assets, a factor is not answerable for the subcontractor's failure to make payment to trust beneficiaries under article 3-A of the Lien Law (*see, Caristo Constr. Corp. v Diners Fin. Corp.*, 27 AD2d 661, *affd* 21 NY2d 507 [payment made pursuant to obligations of contractor's performance bond]). Having undertaken an independent contractual obligation to make payment to Quantum, LPG is barred by the terms of the estoppel certificate from asserting the claims of DDV's suppliers by way of a defense. Concur—Sullivan, J. P., Rosenberger, Rubin and Andrias, JJ.