07-0087-cv
Reliastar Life Insurance Company of New York v. Home Depot U.S.A., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: March 25, 2008)                                   Decided: June 29, 2009)

Docket No. 07-0087-cv

_____

Reliastar Life Insurance Company of New York, a New York Corporation
*Plaintiff-Counter-Defendant-Appellee*,


-*v.*-


Home Depot U.S.A, Inc., a Delaware Corporation,
*Defendant-Counter-Claimant-Third-Party-Plaintiff-Appellant*,

G&S Investors/Willow Park, L.P.,
*Third-Party-Defendant*.

_____

BEFORE:      JACOBS, *Chief Judge* and HALL, *Circuit Judge*.[*]

Appellant Home Depot appeals from a judgment in favor of appellee ReliaStar in a suit brought by ReliaStar seeking payments owed pursuant to a lease and a recognition agreement.  We conclude that: 1) New York's Uniform Commercial Code does not prohibit Home Depot from asserting constructive eviction as a defense to ReliaStar's claims arising from the lease; 2) if Home Depot was unaware of the faulty condition of the building pad when it executed the parties'

_____

[*] Judge Wilfred Feinberg, originally a member of the panel, recused himself subsequent to oral argument.  Because the remaining members of the panel are in agreement, we decide this case in accordance with § 0.14(b) of the rules of this Court.

recognition agreement and its lack of awareness was reasonable at the time, the estoppel certificate in the recognition agreement does not bar Home Depot's constructive eviction defense; and 3) if Home Depot was constructively evicted, the lease was terminated and Home Depot was relieved of its obligation to pay "rents" under the "hell or high water" clause of the parties' recognition agreement. Accordingly, we VACATE the judgment and REMAND the case for further proceedings.

_____

| | |
|---|---|
| FOR APPELLANT: | John H. Gross, (Matthew J. Morris, *on brief*), Proskauer Rose LLP, New York, NY. |
| FOR APPELLEE: | Anthony M. Piccione, (John A. Bougiamas, *on brief*), Otterbourg, Steindler, Houston & Rosen, P.C., New York, NY. |

PER CURIAM:

Appellant Home Depot U.S.A., Inc. ("Home Depot") appeals from the December 20, 2006 judgment of the United States District Court for the Eastern District of New York (Platt, *J.*) in favor of appellee ReliaStar Life Insurance Company of New York ("ReliaStar") in a suit brought by ReliaStar seeking payments owed pursuant to a lease and a recognition agreement (the "Recognition Agreement"). *See Home Depot U.S.A., Inc. v. G&S Investors/Willow Park, L.P.*, No. 98-CV-6719, 2005 WL 3018701 (E.D.N.Y. Nov. 7, 2005). Although the district court's decision addressed several claims against various parties, the only claims on appeal here are those made by ReliaStar against Home Depot. For the reasons that follow we conclude that: 1) New York's Uniform Commercial Code (U.C.C.) does not prohibit Home Depot from asserting constructive eviction as a defense to ReliaStar's claims arising from the lease; 2) if Home Depot was unaware of the faulty condition of the building pad when it executed the parties' Recognition Agreement and its lack of

2

awareness was reasonable at the time, the estoppel certificate in the Recognition Agreement does not bar Home Depot's constructive eviction defense; and 3) if Home Depot was constructively evicted, the lease was terminated and Home Depot was relieved of its obligation to pay "rents" under the "hell or high water" clause of the parties' Recognition Agreement.

## BACKGROUND

On February 27, 1989, Home Depot entered into a lease with landlord G&S Investors/Willow Park L.P. ("G&S") for premises in Farmingdale, New York, upon which Home Depot planned to construct a home improvement center. Under the terms of the lease, G&S was obligated to provide a "building pad," while Home Depot was responsible for building on the site. An earthen building pad was provided by G&S, on which Home Depot constructed a store which opened on December 27, 1990.

On October 19, 1993, G&S mortgaged the Farmingdale property to North Atlantic Life Insurance Company of America, to which ReliaStar is a successor in interest. The mortgage was guaranteed by an assignment of lease agreement (the "Assignment Agreement"), by which G&S assigned "[a]ll rents, income, contract rights, leases and profits now due or which may hereafter become due under or by virtue of any lease" to ReliaStar, including its lease with Home Depot. The Assignment Agreement further provided that the lessee (Home Depot) was required to recognize the assignment of the lease and to make all payments directly to the mortgagee.

In accordance with its obligations to recognize assignments as provided for in the lease, on October 19, 1993, Home Depot executed the Recognition Agreement, drafted by ReliaStar, acknowledging the assignment of Home Depot's lease with G&S to ReliaStar. The Recognition Agreement included a "hell or high water" clause in its paragraph 7(a). The "hell or high water"

clause provided that:

> Tenant understands that a substantial inducement for Mortgagee to purchase the Notes is the continuing existence of the Lease, the income stream payable therefrom and the direct payment to the Mortgagee of all rents and other payments due under the Lease and that in furtherance thereof the Mortgagor has by the Assignment assigned its interest in the Lease, the rents and all other payments *due* under the Lease to Mortgagee as security for repayment of the Note.  Tenant agrees that notwithstanding anything in the Lease or this Agreement contained to the contrary, until Mortgagee notify [sic] tenant that the Assignment has been released, Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment all rents, purchases payments and other payments of whatever kind described in the Lease *without any reduction, set off, abatement, or diminution whatever*.

 (Emphases added).  The agreement also included an estoppel certificate in its paragraph 8, which stated:

> CERTIFICATION OF TENANT.  Tenant represents to Mortgagee as follows:
> . . .
>
> d. Tenant has fully inspected the Premises and found the same to be as required by the Lease, in good order and repair, and all conditions under the Lease to be performed by the landlord have been satisfied; including but not limited to payment to Tenant of any landlord contributions for Tenant improvements and completion by landlord of the construction of any leasehold improvements to be constructed by the landlord;
>
> . . . .
>
> f. As of this date, the Mortgagor, as landlord, is not in default under any of the terms, conditions, provisions or agreements of the Lease and Tenant has no offsets, claims or defenses against the Mortgagor, as landlord with respect to the lease;

Home Depot contends that in late 1995 or early 1996 it detected cracks in its store walls. Home Depot's building on the Farmingdale lot began to settle unevenly, allegedly as a result of a defective building pad.  After G&S refused to make necessary structural repairs, Home Depot made

4

its own temporary repairs at a cost of $750,000. But the uneven settling continued and, in August 1999, Home Depot vacated the premises on the advice of its structural engineers. Home Depot stopped paying rent in August 1999 and notified G&S that the building pad failure resulted in its constructive eviction from the premises.

In September 1999, ReliaStar brought a claim in the United States District Court for the District of Minnesota against Home Depot seeking all monies owed under the assignment of lease agreement and the Recognition Agreement. On January 13, 2000, the court granted Home Depot's motion for a transfer of venue. *See ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc.*, No. 99-1394 (D. Minn. Jan. 13, 2000) (order granting change of venue). The case then shifted to the Eastern District of New York where it was consolidated with other cases related to Home Depot's alleged constructive eviction from the Farmingdale property.

On November 7, 2005, the district court granted ReliaStar's motion for summary judgment against Home Depot, concluding that paragraph 7(a) of the Recognition Agreement constituted an enforceable "hell or high water" clause that estopped Home Depot from asserting constructive eviction. In granting the motion, the district court found that the language of the "hell or high water" clause in paragraph 7(a) was "unambiguous on its face." *See Home Depot U.S.A., Inc. v. G&S Investors/Willow Park, L.P.*, Nos. 98-cv-6719, 00-cv-676 (TCP), 2005 WL 3018701, at *7 (E.D.N.Y. Nov. 7, 2005). The court noted that such clauses are generally enforceable and that "courts have found that a party is estopped from asserting any defenses against the clear obligations outlined in such clauses." *Id.*

On appeal, Home Depot argues that neither the "hell or high water" clause in paragraph 7(a) nor the estoppel certificate in paragraph 8 bars Home Depot from asserting constructive eviction as a

grounds for voiding its obligation to pay rent to ReliaStar under the Recognition Agreement.

**DISCUSSION**

"We review a district court's grant of summary judgment *de novo* and to determine whether the court properly concluded that there was no genuine issue of material fact so that the moving party was entitled to judgment as a matter of law." *Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp.*, 419 F.3d 107, 110 (2d Cir. 2005). We also review a district court's contract interpretation *de novo*. *Id*.

Under New York's U.C.C., "[a]n agreement by parties that the contract can be assigned free of any defenses which an account-debtor may have against the assignor is enforceable by a good-faith, for-value assignee against ordinary defenses, not including fraud, duress *or the like*[.]" *Id*. (citing N.Y. U.C.C. § 9-403(c)) (emphasis added). As a good-faith assignee of G&S, ReliaStar took free of many of the defenses that Home Depot might assert to defeat enforcement of the contract in this case. The assignment of the lease to ReliaStar, however, does not preclude Home Depot from asserting all defenses, specifically "fraud, duress or the like."

We conclude that New York's U.C.C. does not prohibit Home Depot from asserting constructive eviction as a defense to ReliaStar's claims arising from the lease. Constructive eviction terminates a lease, *Sears, Roebuck & Co. v. 9 Ave.-31 St. Corp.*, 274 N.Y. 388, 406 (1937), and New York law provides that a constructively evicted tenant does not owe further rent to the landlord or his assignees. *Whalin v. White*, 25 N.Y. 462, 465 (1862) ("There must be an eviction, actual or constructive, before the rent becomes due, . . . to defeat an action for the rent at the suit of the landlord or his assigns."). Accordingly, constructive eviction is similar to the defenses of fraud and duress in that it goes to the very existence of the agreement, rather than a failure to perform in

6

accordance with the terms of the agreement. *See, e.g., Gantell v. Friedmann*, 197 N.Y.S.2d 605, 607 (N.Y. Sup. Ct. 1959) ("Where there is a mistake as to the character of an instrument, as defendant alleges, which relates to its existence as a contract or legally operative document of any kind, there is no mutual assent. If suc[h] a mistake occurs, whether induced by fraud or without it, no contract is formed.") (citations omitted). If Home Depot's claim of constructive eviction is not estopped, and is meritorious, then constructive eviction would defeat any claim G&S could bring against Home Depot seeking to recover rent owed after August 1999. Similarly, as G&S's assignee, ReliaStar's claims for rent owed after August 1999 would likewise be defeated by constructive eviction. *See Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 (1975) ("It is elementary ancient law that an assignee never stands in any better position than his assignor.") ReliaStar prevails on its claims for rent owed, however, if the defense of constructive eviction is barred either by the estoppel certificate or by the "hell or high water" clause in the Recognition Agreement executed directly between Home Depot and ReliaStar. We address these issues in turn.

The Estoppel Certificate

The first potential bar to Home Depot's assertion of constructive eviction is the estoppel certificate contained in paragraph 8 of the Recognition Agreement. Home Depot does not contest that it agreed to the terms of the estoppel certificate at the time that the agreement was executed. Home Depot is thus bound by the representations it made in the contract. *See Quantum Corporate Funding Ltd. v. L.P.G. Assoc., Inc.*, 667 N.Y.S.2d 702, 705 (N.Y. App. Div. 1st Dep't 1998) ("Unless (1) there is an equitable basis to invalidate the certificate, such as duress, or (2) the assignee took with knowledge of some defect in the manner in which the certificate was obtained, neither of which is claimed in this matter, [the party making the representations] is bound to honor its

representation, and the Court will give it effect." (citations omitted)).

In the estoppel certificate, Home Depot represented that it had "fully inspected the Premises" and found them in "good order and repair." On appeal, Home Depot argues that it never made any representation to ReliaStar about the condition of the building pad because "the Premises" included only the store, the attached garden center and storage area, and not the building pad and soil underneath.

Home Depot's limited definition is not supported by the language of the Recognition Agreement or the Lease.[1] In paragraph 8(d) of the Recognition Agreement, Home Depot acknowledges that "all conditions under the Lease to be performed by the landlord have been satisfied; including . . . completion by landlord of the construction of any leasehold improvements to be constructed by the landlord." Article II of the lease provides that "Landlord shall commence to . . . compact the building pad." Home Depot's certification that the "leasehold improvements to be constructed by the landlord" are complete therefore includes G&S's construction of the building pad. Home Depot cannot now argue that its certification contained in the Recognition Agreement – that the Premises had been inspected and were in "good order and repair" – does not also apply to the building pad. *See id.*

Although the building pad is part of the Premises, it does not necessarily follow that the estoppel certificate bars Home Depot's defense of constructive eviction. The language of the estoppel certificate and the lease provision relating to the certificate do no more than express Home Depot's knowledge at the time the certificate was executed. Section 18.13 of the Lease, which

---

[1] The Recognition Agreement specifically defines "the Premises" in paragraph B as "certain real property more fully described in Exhibit 'A' attached . . . ." Exhibit A provides the coordinates of the parcel of land.

8

outlined Home Depot's obligations with respect to the estoppel certificate, requires Home Depot to certify, upon the Landlord's request, "whether there are *then existing* defaults by Landlord in the performance of its obligations under this Lease." (Emphasis added). As for the estoppel certificate itself, paragraph 8(f) warrants that "[a]s of this date," the landlord is not in default and that Home Depot "has no offsets, claims or defenses against the Mortgagor, as landlord, with respect to the Lease." The estoppel certificate speaks in the present tense. It makes no warranties about present or future conditions that were not known when it was executed. "This is consistent with the general purpose of an estoppel certificate, which is to assure one or both parties to an agreement that there are no facts known to one and not the other that might affect the desirability of entering into the agreement, and to prevent the assertion of different facts at a later date." *Lawyers Title Ins. Corp. v. Honolulu Fed. Sav. & Loan Ass'n*. 900 F.2d 159, 163 (9th Cir. 1990) (citing Black's Law Dictionary, 5th ed. (1979)).

Home Depot asserts that it did not discover the defective building pad until at least two years after the execution of the Recognition Agreement. As long as Home Depot inspected the building pad before building improvements on it, and was unaware of the faulty condition of the building pad when it executed the Recognition Agreement (and if its lack of awareness was reasonable at the time), the estoppel certificate does not bar Home Depot's constructive eviction defense.

The "Hell or High Water" Clause

Under the Assignment Agreement, ReliaStar obtained only those rights possessed by G&S under the lease — rights that we hold would terminate in the event of constructive eviction. The Recognition Agreement, however, contains an additional clause which expanded upon the rights assigned by G&S, and obligated Home Depot to continue making payments to ReliaStar

9

"unconditionally and absolutely."  Under New York law, "hell or high water" clauses are generally

enforceable.  *See BrooksAmerica Mortgage Corp.*, 419 F.3d at 110 ("[U]nder New York law, 'hell or

high water' clauses are enforceable in the context presented here, *i.e.*, by good faith assignees against

sophisticated parties.").  The courts that have previously considered the use of "hell or high water"

clauses have been concerned generally with their use in finance leases or equipment leases, *see, e.g.,*

*Rhythm & Hues, Inc. v. Terminal Mktg. Co.,* No. 01 Civ. 4697(AGS), 2002 WL 1343759 (S.D.N.Y.

June 19, 2002), rather than with their use in the context of leasing real property.

The language in this "hell or high water" clause that "Tenant shall be unconditionally and

absolutely obligated to pay [ReliaStar]. . . all rents, purchase payments and other payments of

whatever kind described in the Lease without any reduction, set off, abatement, or diminution

whatever" could create an unconditional guarantee by Home Depot to continue to make all described

payments to ReliaStar irrespective of any defenses that Home Depot might have.  The main force of

the guarantee, however, is the payment of "all rents" and the description of "rents" as "*due* under the

Lease."  (Emphasis added).  As discussed above, under New York law, it is well established that a

party who has been constructively evicted is relieved of its obligation to pay rent, *see Johnson v.*

*Cabrera*, 668 N.Y.S.2d 45, 46 (N.Y. App. Div. 2d Dep't 1998), because that constructive eviction

terminates the lease, *see Sears, Roebuck & Co. v. 9 Ave.-31 St. Corp.*, 274 N.Y. at 406.  Accordingly,

if Home Depot was constructively evicted, the lease was terminated and Home Depot was relieved of

its obligation to pay "rents" under the "hell or high water" clause of the Recognition Agreement.

**CONCLUSION**

For the reasons stated above, the judgment of the district court is VACATED AND

REMANDED for further proceedings in accordance with this opinion.