In the Matter of CATHERINE EBLING, Appellant, against NEW YORK STATE CIVIL SERVICE COMMISSION et al., Respondents.
In the Matter of JOHN FILIP et al., Appellants, against J. EDWARD CONWAY et al., Constituting the Civil Service Commission of the State of New York, et al., Respondents.
In the Matter of HAROLD DOYLE et al., Appellants, against J. EDWARD CONWAY et al., Constituting the Civil Service Commission of the State of New York, et al., Respondents.
In the Matter of HARRY P. MINICH, Appellant, against J. EDWARD CONWAY et al., Constituting the Civil Service Commission of the State of New York, et al., Respondents.
In the Matter of EDWARD J. O'MALLEY et al., Appellants, against J. EDWARD CONWAY et al., Constituting the Civil Service Commission of the State of New York, et al., Respondents.

Argued January 12, 1953; decided April 9, 1953.

*Leonard N. Lakser* for Catherine Ebling, appellant. I. The State Civil Service Commission, in order to set aside an examination taken by petitioner as given by the Lackawanna Civil Service Commission, must find that the Lackawanna Civil Service Commission acted in an unreasonable, arbitrary or capricious manner. (*Matter of Furman* v. *Marsh,* 185 Misc. 209; *Matter of Pape* v. *Kern,* 176 Misc. 36; *Davis* v. *Wiener,* 260 App. Div. 127; *Matter of Cowen* v. *Reavy,* 283 N. Y. 232.) II. The State Civil Service Commission acted in an illegal, arbitrary and capricious manner in canceling petitioner's appointment without giving petitioner an opportunity to defend. (*Palko* v. *Connecticut,* 302 U. S. 319; *Railroad Comm.* v. *Pacific Gas Co.,* 302

U. S. 388; *Ohio Bell Tel. Co.* v. *Commission,* 301 U. S. 292.) III. Respondents, constituting the New York State Civil Service Commission, do not have the power to remove petitioner. (*Matter of Brooklyn Children's Aid Soc.* v. *Prendergast,* 166 App. Div. 852, 215 N. Y. 705.) IV. Respondents are guilty of laches. (*Matter of Williams* v. *Pyrke,* 233 App. Div. 345.) V. The Court of Appeals must enter a peremptory order of mandamus.

*Thomas J. O'Donnell* for John Filip and others, appellants. I. The State Civil Service Commission seeks to substitute its judgment and discretion for that of the Lackawanna Civil Service Commission. (*Matter of Joseph Burstyn, Inc.,* v. *Wilson,* 303 N. Y. 242; *Matter of Wignall* v. *Fletcher,* 303 N. Y. 435.) II. The State commission did not proceed in accordance with law. (*Matter of Kaney* v. *New York State Civil Service Comm.,* 298 N. Y. 707; *Matter of Wignall* v. *Fletcher,* 303 N. Y. 435.) III. The commission was guilty of laches.

*Nathaniel L. Goldstein, Attorney-General* (*Matthew A. Tiffany* and *Wendell P. Brown* of counsel), for respondents. I. The court had the power summarily to deny petitioners' applications and dismiss the petitions. (*Matter of Maresca* v. *McElligott,* 262 App. Div. 179; *Matter of Doherty* v. *McElligott,* 258 App. Div. 257; *Matter of Rosenberg* v. *Board of Estimate of City of N. Y.,* 257 App. Div. 839, 281 N. Y. 835; *Matter of Strauss* v. *Hannig,* 256 App. Div. 662, 281 N. Y. 612; *Matter of Levi* v. *Regents of Univ. of State of N. Y.,* 256 App. Div. 444, 281 N. Y. 527.) II. Petitioners have failed to present any evidentiary facts to create a triable issue of their claim that the State commission acted arbitrarily, capriciously or unreasonably. The findings of the State commission with respect to the police matron examination and that for fire lieutenant, fire captain and police lieutenant cannot be said to be arbitrary, capricious or unreasonable. III. The State commission could rescind the municipal examination if it found it to be an inadequate test of the relative capacity and fitness of the candidates for the position in question. (*Matter of Kaney* v. *New York State Civil Service Comm.,* 190 Misc. 944, 273 App. Div. 1054, 298 N. Y. 707.) IV. Petitioners are not entitled to notice of a hearing before

the State commission. (*Matter of Connolly* v. *Conway,* 27
App. Div. 945; *Matter of Kaney* v. *New York State Civil Servic*
*Comm.,* 190 Misc. 944, 273 App. Div. 1054, 298 N. Y. 707.) V. Th
lapse of time between the date of the examinations and the dat
of the action by the State commission is immaterial. (*Matte*
*of Kaney* v. *New York State Civil Service Comm.,* 190 Misc
944, 273 App. Div. 1054, 298 N. Y. 707; *Matter of Conway* v
*Kaney,* 274 App. Div. 849; *Matter of Connolly* v. *Conway,* 27
App. Div. 945.)

DESMOND, J. In April, 1949, all fifteen of these petitioner
were, without notice or hearing, removed, by order of respond
ent State Civil Service Commission, from their respective pos
tions in the classified civil service of the City of Lackawanna
They had been appointed to those posts (as police matro
police lieutenants, fire department lieutenants and fire captains
on various dates in 1945, 1947 and 1948, after successfully pass
ing written, competitive civil service examinations held by th
Lackawanna Municipal Civil Service Commission in 1944, 194
and 1946. All the petitioners had previous service (som
for many years) prior to those examinations and appointment
in the same departments of the Lackawanna municipal goverr
ment. The present proceedings are brought, under article 7
of the Civil Practice Act, for mandamus type orders reinstatin
the petitioners in their positions.

The answer of the commission sets forth its reasons for pet
tioners' removal. It tells us that, in conducting an investigatio
(under Civil Service Law, § 11, subd. 6) of the Lackawann
Municipal Civil Service Commission, it found (see same se
tion, subd. 7) that the examinations which these petitioner
had passed were not practical or sufficient tests of capacity an
fitness for the several positions to which they were late
appointed. Accordingly, says the commission, it exercised th
power given it by subdivision 7 of section 11 of the Civil Ser
ice Law to " rescind any examination or eligible list c
cancel an appointment already made from a list so rescinded '
Attached to the pleadings filed herein by the State commissio
are the disputed examination questions, and the State commi
sion's conclusions as to their inadequacies. From other exhibi
similarly attached, it appears that the commission, in so co

cluding, relied on the opinions of experts employed by the commission. Attached to the petitions, on the other hand, are affidavits by five other experts, all of whom concur in the view that the several examinations thrown out by the commission constituted fair tests of fitness for the public employments in question.

No trial of these proceedings was held by Special Term. That court held that no triable issue of fact existed, since the commission had decided that the tests were not fair and adequate, and since the affidavits of petitioners' experts established merely a basis for a difference of opinion as to that. Therefore, each petition was dismissed. Thus, petitioners, with no showing of fault on their parts, or fraud by anyone, are out of their jobs.

This truly extraordinary result is sought to be justified by section 11 (*supra*) which empowers the commission " at any time ", by unanimous vote, to rescind any examination or eligible list and cancel any appointments made from a list so rescinded, the only limitation being that such action shall not be taken on any ground other than that " the provisions or purposes of this chapter [i.e., the Civil Service Law] are not properly or sufficiently carried out ", there being a further requirement of written specifications showing in what particulars " the provisions or purposes " have not been carried out. So reads subdivision 7, and it has been authoritatively held in other proceedings growing out of this same Lackawanna civil service investigation (see *Matter of Kaney v. New York State Civil Service Comm.*, 190 Misc. 944, affd. 273 App. Div. 1054, affd. 298 N. Y. 707), that the statute gives persons appointed from lists later disputed no right to notice or hearing as to such dispute. The order which we are reviewing herein means, therefore, this: that any municipal employee, despite his good-faith passing of a competitive written civil service examination, and good-faith appointment from an appropriate eligible list, may at any time thereafter lose his position if the commission, in an investigation in which the employee has no part at all, decides that the examination he passed was not a fair test of qualification for the particular employment. We do not deny that the Legislature could so enact, if it wished. But, in view of the fundamental purposes of the Civil Service

Law, and the traditional legislative policy in this State of furnishing effective protection to civil service appointees, we cannot bring ourselves to the belief that the Legislature ever intended or foresaw an outcome like this one.

Subdivision 7 of section 11 of the law allows examination rescission and list rescission and appointment cancellation, on one ground only, that is, that " the provisions or purposes " of the Civil Service Law " are not properly or sufficiently carried out ". Read literally, that language would license the commission to wipe out examinations, lists and appointments in municipalities for any violation of any one of dozens of " provisions " in the law, and so would leave no permanence at all in any appointment in the civil service of any municipality. But statutes are not so construed, if construction so harsh, unreasonable and disastrous can be avoided (see *Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38, 44). We think a meaning more fair, and less destructive, can readily be found. We hold that " the provisions or purposes " referred to in subdivision 7 are the prime, fundamental purposes of the Civil Service Law only, and that it must have been the legislative intent, at least as to appointments already made, that there could be no cancellation thereof, unless the examination had been so obviously inadequate, or so completely unrelated to the duties of the position, as to be on its face a nullity. Only by such a construction can the integrity and permanence of municipal civil service and the rights of good-faith examinees and appointees be safeguarded.

Our conclusion that the Legislature never intended to confer on the State commission so sweeping a power to overrule the fifty-six municipal commissions is confirmed by the general statutory scheme which makes those municipal commissions largely autonomous. Subdivision 18 of section 20 of the General City Law empowers every city to create a municipal civil service and " to make rules for the classification of the offices and employments in the city's service, for appointments, promotions and examinations ". Section 14 of the Civil Service Law, as to the competitive class, provides for examinations to be " conducted by the state or municipal commission " and requires that such examinations " shall be practical in their

character and shall relate to those matters which will fairly test the relative capacity and fitness of the persons examined ", etc. (see, also, Rules for Classified Civil Service, rule X). Nowhere in any statute or rule (except in § 11, subd. 7, *supra*) do we find any permission or requirement for review by the State commission of a municipal commission's examinations and certifications.

The dissenting Justice in the Appellate Division, who thought, as we do, that the statute could not fairly be applied in all its stark literalness, concluded that the courts should read into it a requirement that rescission or cancellation must be had within a reasonable time. We agree that such an interpolation should be made, but it would not of itself afford sufficient protection to appointees. All but one of the appointments here in question were, apparently, promotional within the same municipal department, but the statutory construction applied by the commission and the courts below would, if upheld by us, be available as against any appointee. A new appointee in the civil service of a city, who had, by accepting an appointment, burned behind him the bridge to an old job in private industry, would be little comforted by a proviso that his removal, without notice or hearing, from his city job, would have to be ordered within a " reasonable time ". Our thought is that, to make this statute jibe with the general purpose, apparent throughout the Civil Service Law, of protecting civil service employees (see § 22, for instance) it must be read as referring to those examinations only which are so faulty as to be no tests at all. We cannot ourselves take on the role of examination experts, but we have looked at the questions on these rescinded examinations, and are satisfied that they are not so patently unrelated to the positions involved, as to bring into play the commission's extraordinary subdivision 7 powers. This record, accordingly, shows that there is no more than a difference of opinion as to the quality and comprehensiveness of the respective tests. We hold that appointments made from lists resulting from competitive municipal civil service examinations cannot be nullified on such a mere balancing of expert opinions. On these papers, petitioners were entitled to the mandamus orders they prayed for.

*Matter of Kaney* v. *New York State Civil Service Comm.* (*supra*) is not controlling on us here. That was a prohibition proceeding wherein certain persons, theretofore appointed to municipal service positions in Lackawanna, sought to halt the State commission's Lackawanna investigation, out of which these attempted rescissions and cancellations later arose. Prohibition was refused, since the statute (§ 11, subd. 7, *supra*) was construed, in that case, as neither requiring notice to appointees of such an investigation, nor permitting any such investigation to produce a result which would be binding on the appointees. Indeed, the Special Term opinion in *Kaney* (no opinion was written in this court or in the Appellate Division) said that, if any examinations, lists or appointments should be stricken down by the commission, the holders of the affected positions could later have their day in court in mandamus proceedings.

The orders appealed from should be reversed, with costs in all courts, and the several proceedings remitted to Special Term with instructions to grant the relief prayed for.

FROESSEL, J. (dissenting). Fifteen petitioners in five article 78 proceedings seek to annul a decision and order of the State Civil Service Commission rescinding City of Lackawanna civil service examinations and the eligible lists resulting therefrom, and canceling the appointments of petitioners from said lists. The examinations were for police matron, fire lieutenant, fire captain and police lieutenant, and were given between 1944 and 1946. Petitioners passed such examinations as were given them, and in due time were appointed, the last appointment having been made on September 27, 1948.

In 1946 the State Civil Service Commission commenced an investigation of the affairs of the Lackawanna Municipal Civil Service Commission, following which extended hearings were held under subdivision 7 of section 11 of the Civil Service Law, upon notice and charges as therein required, resulting in the determination sought to be annulled, which has thus far been sustained. The basis of the State commission's decision and order was that the examinations did not properly or sufficiently carry out the provisions or purposes of the Civil Service Law;

in other words, did not adequately test the candidates' merit and fitness.

It would serve no useful purpose to discuss in detail each of the examinations. A brief reference thereto, however, will be illuminating. The police matron examination — the subject matter of the first proceeding — consisted of five simple questions. The first four were on first aid: " #1 — What is fainting? #2 — What is the treatment for fainting? #3 — What is sunstroke? #4 — What is the treatment for sunstroke? " These were evaluated at *60%*. The sole remaining question, evaluated at 40%, was: " Write a composition of forty words or more pertaining to the duties and responsibilities of a police matron." The answer thereto was in the " specification " for this examination, as was indeed the case with the composition questions in all the other examinations. Petitioner was appointed within twenty-four hours after taking the examination.

In the fire lieutenant examination, a *60%* credit was allowed for answers to three so-called " service record " questions, which asked for the commencement date of service, number of illness absences in three years, and the number of charges against the candidate. Ten per cent was allowed for knowing where ten fire boxes were located; and 15% each for two compositions.

In the fire captain examination, the same first aid questions were asked as on the police matron examination, the same " service record " questions as on the fire lieutenant examination, and a fifty-word composition was called for, rated together at 70%; fifteen general questions, rated at 30%, were also asked, the first of which was: " Why is it so important that fire apparatus gets to the fire as soon as possible? "

In the police lieutenant examination, 10% was allowed for substantially the same " service record " questions as were asked on the fire lieutenant examination, 30% for the correct spelling of eight simple words, such as " kriminal ", 20% for four elementary questions in arithmetic, one of which was: " What part of an hour is 30 minutes? " and likewise as to 20, 45 and 55 minutes; and 30% for six so-called practical questions, such as: " What is a Barrister? " and " What is burglary? " The examinations given under subdivision 5 of section

246 of the Military Law were *identical* (not comparable, as required by that statute) with examinations given less than two years previously as to fire lieutenant, and less than a year previously as to fire captain.

Our State Constitution (art. V, § 6) provides* that " Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ". To this fundamental constitutional mandate, all legislative and judicial power must yield. As we said, through LEHMAN, J., in *Palmer* v. *Board of Educ.* (276 N. Y. 222, 225, 226): " By placing this provision in the Constitution the People of the State have declared in unmistakable terms that merit, ascertained as therein provided, shall govern appointments and promotions in the public service, and have thus formulated and announced the public policy of the State. No administrative officer may violate the provisions of the Constitution, and no court may sanction a violation.  *  *  * An employment which in its inception violates the provisions of the Constitution is illegal and against public policy, regardless of the good faith of the parties." (See, also, *Matter of Carow* v. *Board of Educ.*, 272 N. Y. 341, 344; *Matter of Scahill* v. *Drzewucki*, 269 N. Y. 343, 346.)

To implement the constitutional mandate, the Legislature in 1944 (L. 1944, ch. 435) enacted subdivision 7 of section 11 of the Civil Service Law, which reads: " Said state commission may at any time, by unanimous vote of the three commissioners, amend or rescind any rule, regulation or classification prescribed under the provisions of this section or *rescind any examination or eligible list or cancel an appointment already made from a list so rescinded,* provided that said state commission shall state the reasons for such action in writing and file the same and a certified transcript thereof as a public document as hereinbefore provided, and give an opportunity to the municipal civil service commissioners concerned to make a personal explanation and to file papers in opposition to such action. *The said state commission, however, shall not take such action upon any ground*

---

* Reflecting very slight, immaterial amendments made in 1950.

*other than that the provisions or purposes of this chapter are
not properly or sufficiently carried out,* nor without specifying
in writing and detail in what particular such provisions or
purposes are not carried out ''. (Emphasis supplied.) The
constitutionality and the purpose of this statute have been passed
upon by us in *Matter of Kaney* v. *New York State Civil Service
Comm.* (190 Misc. 944, 949, affd. 273 App. Div. 1054, affd.
298 N. Y. 707), where it was said: '' Under the 1944 amend-
ment, the State Civil Service Commission has the power to
rescind an eligible list established by a municipal commission
not only on the ground of fraud or material misstatement but
also on the ground that ' the provisions or purposes of this
chapter [Civil Service Law] are not properly or sufficiently
carried out.' This would seem to embrace the power to rescind
the list and cancel appointments upon the ground that the
examination given for the position was not sufficiently practical
in character and did not fairly test the relative capacity and
fitness of the persons examined to discharge the duties of the
position (Civil Service Law, § 14).'' It was also held in that
case that the statute does not entitle petitioners to notice and
hearing before the State commission. (See, also, *Matter of
Connolly* v. *Conway,* 277 App. Div. 945, motion for leave to
appeal denied 301 N. Y. 814.)

Pursuant to the clear and unambiguous power vested in it
by subdivision 7 of section 11, the State commission, in its
decision and order herein, made the determination here chal-
lenged on the ground that the examinations '' did not properly
or sufficiently carry out the provisions or purposes of the Civil
Service Law '', and, more specifically, that they did not meet
the requirements '' of Section 14 '' (now § 14, subd. 6) thereof
'' and of Rules X and XXVII(6) '' of the Lackawanna Rules
of Civil Service. Section 14 provided: '' The examinations
shall be public and shall be *practical in their character and shall
relate to those matters which will fairly test the relative capacity
and fitness* of the persons examined to discharge the duties of
that service into which they seek to be appointed.'' (Emphasis
supplied.)

Having predicated its action on the enforcement of section
14, the State commission was clearly acting in strict compliance

with the plain mandate of subdivision 7 of section 11. (*Matter of Kaney* v. *New York State Civil Service Comm., supra; Matter of Connolly* v. *Conway, supra.*) The statute must be read to mean what it says, and we may not read words into it that are at variance with its clear purpose. It expressly authorizes action by the commission in accordance with the " provisions or purposes of this chapter ", with appropriate safeguards against precipitate action, and with the requirement of unanimity. Section 14 is one of its provisions. And the purpose of the chapter — indeed its fundamental purpose — is mandated by the Constitution. The Legislature has endeavored to obey this direction; we have no right to disobey it nor to attribute to the Legislature such a design. The majority agree that the Legislature could enact such a statute as to achieve the result here attained, and the fact is that it has. The " wisdom of the statute is for the Legislature, and not the courts, to decide " (*Matter of Kaney* v. *New York State Civil Service Comm., supra,* p. 949). The purpose of the constitutional provision is to protect the civil service, so that appointments and promotions may be made only on " merit and fitness ", tested by valid competitive examinations. Failure to uphold this injunction will impair the integrity of and do incalculable harm to the whole civil service system, and result in withholding the very protection which the Constitution mandates.

Nor should we overlook the fact that the People of the State, who mandated the constitutional provision, have rights in the public policy which it announces. We are here dealing with fire captains and fire and police lieutenants, as well as police matrons — responsible officers charged by law with the duty of protecting the lives, the liberty and the property of our people. It is a grave matter when such officers may be admitted to their positions on the basis of examinations which utterly fail to test their " relative capacity and fitness * * * to discharge the duties " appertaining thereto. The preservation of the merit system is not only in the best interests of civil service, but also affords the public that protection to which it is entitled under our Constitution. The inconveniences to petitioners flowing from the determination challenged must yield to the constitutional and statutory requirements that a valid appointment

can be based only upon merit and fitness as determined by a proper examination.

We are told by the majority (p. 227) that " Nowhere in any statute or rule (except in § 11, subd. 7, *supra*) do we find any permission or requirement for review by the State commission of a municipal commission's examinations and certifications." Is not one enactment sufficient? Must it be multiplied to be effective?

The fact that petitioners have already been appointed does not preclude the State commission from invalidating the appointments, for subdivision 7 of section 11 expressly provides that the commission may " cancel an appointment *already made* ". (Emphasis supplied.) (*Matter of Kaney* v. *New York State Civil Service Comm., supra.*) Petitioners are not being deprived of any vested right because if, as found by the State commission, these examinations failed to carry out the provisions of section 14, then each of the petitioners failed to pass a requisite examination. The effect is the same as if there had been no examinations; the appointments were therefore invalid and conferred no tenure on petitioners, irrespective of good faith. (*Palmer* v. *Board of Educ.*, 276 N. Y. 222, *supra; People ex rel. Hannan* v. *Board of Health*, 153 N. Y. 513, 519-520.)

It may not be said, as a matter of law and on the record before us, that the commission was not justified in finding that the provisions of section 14 were not being obeyed. The examination questions speak eloquently for their own inadequacy. A comparison of the duties listed in the specifications with the subject matter of the examinations likewise establishes their utter deficiency. Moreover, the testimony of the commission's two well-qualified experts in the field of preparation and grading of civil service examinations was comprehensive and specific and clearly supported the commission's findings, even when considered in the light of the affidavits of petitioners' experts, which were general in nature. The commission's findings in each case were likewise clear and definite, and in accord with the statute.

In addition to failing to meet the standards enunciated in section 14, there is a further basis for rescinding the fire captain and fire lieutenant examinations taken respectively by peti-

tioners Hughes and Kalamajka. They were in military service at the time the original examinations were given and upon discharge were examined for the respective positions pursuant to subdivision 5 of section 246 of the Military Law. The State commission rescinded their examinations, and properly so, because they were *identical* with the examinations originally given and not, as required by the Military Law, " comparable " examinations.

It is urged that the State commission has been guilty of *laches*. The short answer thereto is that subdivision 7 of section 11 specifically provides that the State commission may take the action authorized thereunder " *at any time* ". (Emphasis supplied.) Moreover, these examinations were given between 1944 and 1946. Appointments were made from 1945 until as late as September 27, 1948. The commission's investigation was already under way in 1946, and notice of charges was served upon the Lackawanna commission in 1947. Between that time and the decision and order of the State commission on April 12, 1949, it was confronted with litigation arising out of examinations given by the Lackawanna Municipal Civil Service Commission, two of which reached the appellate courts (*Matter of Kaney* v. *New York State Civil Service Comm., supra; Matter of Conway* v. *Kaney*, 274 App. Div. 849, appeal dismissed 298 N. Y. 709, motion for leave to appeal dismissed 298 N. Y. 752). Indeed, in the commission hearings, the president stated: " nor is there any attitude or disposition on the part of any member of this Commission to engage in a race with the Courts to make a determination of the proceeding ". Thus it may not be said that the commission did not proceed with reasonable dispatch, consistent with their onerous responsibilities, the numerous issues involved, and the necessity of protracted hearings.

The orders of the Appellate Division should be affirmed, without costs.

DYE and FULD, JJ., concur with DESMOND, J.; CONWAY, J., concurs in the result upon the dissenting memorandum of PIPER, J., in the Appellate Division; FROESSEL, J., dissents in opinion in which LOUGHRAN, Ch. J., and LEWIS, J., concur.

Orders reversed, etc.