204

In the Matter of GEORGE N. HAYNAL, Petitioner, v. BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

In the Matter of ANDREW ANTYPAS, Petitioner, v. UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

In the Matter of ANDREW J. LAPPAS, Petitioner, v. UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

In the Matter of MARVIN BERGMAN, Petitioner, v. BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 15, 1963.

*Alfred H. Adler* for George N. Haynal, petitioner.

*Alfred J. Cicale* and *Maurice A. Reichman* for Andrew Antypas, petitioner.

*Maurice A. Reichman* and *Alfred J. Cicale* for Andrew J. Lappas, petitioner.

*Koenig, Siskind & Drabkin* (*Zenaida Drabkin, Mortimer H. Koenig* and *Jesse Siskind* of counsel), for Marvin Bergman, petitioner.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for respondents.

*Per Curiam.* Respondent Commissioner of Education has made orders directing that the license to practice medicine and the registration as a physician of each of the four petitioners in these article 78 proceedings "be and the same hereby are cancelled". The ground stated in the orders was that the petitioners had not in fact passed the medical examination on which the licenses and registrations were based.

The record in each proceeding demonstrated that although petitioners had each received initial grades in one or two subjects lower than a passing grade, the grades were raised by an officer of the department and upon his re-evaluation passing grades were entered in the department records and a license and registration issued accordingly.

This re-evaluation was irregular; but the irregularity was within the department, and as far as the records before us demonstrate, petitioners had no knowledge of, and took no part in, the irregular re-evaluations.

Petitioners argue that the Commissioner and the Regents were without power to "cancel" their licenses, once having been issued. This argument rests on two grounds: (a) there is no literal authorization of "cancel" under the statute; and (b) the reasons which underly the Commissioner's determination are not among those for which the license or registration of a physician may be "revoked, suspended or annulled" (Education Law, § 6514, subd. 2, par. [a]).

Two grounds only are stated in the statute: that the physician be "guilty of fraud or deceit" in (a) the practice of medicine, or (b) in his admission to practice medicine. In instances where official action has been taken resulting in a status, the right to undo it has been carefully conformed to a statutory authority (*Matter of Wolff* v. *Hodson,* 285 N. Y. 197). This is especially so where the public act has been final in form (*People ex rel. Finnegan* v. *McBride,* 226 N. Y. 252; cf. discussion by Foster, J., in *Matter of Siegel* v. *Mangan,* 258 App. Div. 448, 450 on effect of final and nonfinal action).

There is some view in the court that in the circumstances of these cases the Commissioner had no authority to "cancel" the

licenses once having been issued, without any wrongdoing or connivance by petitioners, in due form and as the result of an examination which the official records of the department showed petitioners had passed, even though this official action was based on mistaken premises (*Matter of Wolff* v. *Hodson, supra*).

We prefer, however, to withhold judgment on this question until there can be a plenary exploration and a determination made of the underlying facts, since we are of opinion that petitioners each demonstrate prima facie a right to relief in the nature of mandamus and justify a judicial inquiry into the question whether the cancellations complained of were arbitrary.

An adequate judicial determination of this question requires a development of the facts. No hearings were held by the Commissioner or by the department; no charges were filed against petitioners. The cancellations were made upon the basis of intramural information acquired by the Commissioner and the Regents, which petitioners, although their rights were involved, had no opportunity to meet or refute. In the absence of a hearing or right to hearing, it seems clear in the circumstances disclosed that relief in the nature of mandamus is the appropriate remedy. (*Matter of Ebling* v. *New York State Civ. Serv. Comm.*, 305 N. Y. 221; *Matter of Kaney* v. *New York State Civ. Serv. Comm.*, 298 N. Y. 707; see, also, *Matter of Abramson* v. *Commissioner of Educ.*, 1 A D 2d 366. Pertinent discussion of the availability of witnesses in a situation like this is to be found in *Matter of Marks* v. *Regents of Univ. of State of N. Y.*, 279 App. Div. 476, affd. 306 N. Y. 591, and in *Matter of Daley* v. *Byrne*, 250 App. Div. 666.)

A determination whether the decision of the Commissioner was arbitrary would rest basically on a consideration of the purpose and intent with which the changes in grade were made by the officer of the department; the true differences in qualification which the changes reflected; the general medical qualification and background of each petitioner; and the prior practices and procedures of the respondent in re-evaluating examiners' marks.

Moreover, it is argued that the petitioners were treated differently from other physicians whose marks had been changed and regraded upward contemporaneously with and similarly to the marks of petitioners but whose licenses were not "cancelled" by the Commissioner. Discrimination may be one aspect of arbitrary action (*Matter of Fitzgerald* v. *State Div., Dept. of Public Serv.*, 262 App. Div. 393, 397).

The issues in the proceedings should be remitted to the Special Term for hearings and determinations; and the stays which

have been granted continued until the entry of final orders, without costs.

BERGAN, P. J., COON, GIBSON, REYNOLDS and TAYLOR, JJ., concur.

Issues in the proceedings remitted to the Special Term for hearings and determinations and the stays continued until the entry of final orders, without costs.