Charles Marks, J.
This is an article 78 proceeding in the nature of mandamus whereby petitioners, Lieutenants in the New York City Police Department, New York City Transit Police Department, and New York City Housing Authority Police seek an order directing that respondents herein, Commissioners of the Civil 'Service Commission of the City of New York and the Civil Service Commission of the City of New York, validate the Captains promotional examination given on January 18, 1969, and further directing that the action of the respondents in canceling said examination and ordering a new examination to be held on May 24, 1969 be declared null and void. In addition, the petitioners request that the respondents *412 be enjoined from conducting a newly scheduled examination pending this determination.
The petition indicates that petitioners were in the competitive civil service of the City of New York and were eligible to take an examination for promotion to the position of Captain in their respective departments. On January 18, 1969 the respondents, in conjunction with the Department of Personnel of the City of New York, conducted said promotional examination, at which time the petitioners were admitted and competed. As of the time of this application the results of that examination have not been released. The petitioners assert that, based upon the tentative key released following the aforesaid test, they believe that their performances on the examination were sufficient to have placed them within the group which passed the examination.
It is further contended that each applicant received a ‘ ‘ suggested bibliography for preparation for police promotion tests ”, dated September 27, 1968, which indicated that the questions to be posed in the examination would be “ substantially based on, but not restricted to, materials contained in the authoritative texts, periodicals and publications listed here ”. The notice also indicated that the candidates were not to assume that the order of the sources was related to the order of the questions or that all the listed material would in fact be used.
The petition discloses that on or about March 18, 1969, petitioners received a copy of a press release, prepared by the Department of Personnel, advising all participants in the examination that on that date ‘ ‘ the Civil Service written test given on January 18,1969 for promotion to Captain in the City’s three police forces was cancelled ’ ’ and that a new examination was to be held on May 24, 1969. The reason provided therein by respondent Hoberman for canceling the examination already held was that 1 ‘ investigation by the Asst. Director of Examinations revealed that 12 questions had been taken from an unreleased police promotion examination given in California in 1959.” In addition, the press release stated that the inclusion of those question “ destroys the competitive nature of the examination, raises questions concerning the integrity of the examining process and reduces the reliability of the test, all in violation of the New York State Constitution.”
Prior to March 18,1969 one of the participants in the January 18,1969 examination filed a complaint with the New York State Division of Human Bights, alleging that the questions dealing with the use of “ correct grammar ” were discriminatory. In substance, it was urged that those question “ in no way could *413 or would have any direct effect upon the performance of the duties of Police Captain.” (Press release of Department of Personnel, Exhibit F, attached to petition.) However, Mr. Hoberman, who serves as Chairman of the City Civil Service Commission and who was also the City Personnel Director, indicated in the afore-mentioned press release that the questions relating to correct English usage were an essential part of the examination and were designed to test the ability to write and review reports which the Commission considered to be “ an important skill ’ ’ in connection with the duties of Captain and higher positions which would result after promotion to the rank of Captain.
While investigating the afore-mentioned complaint, it ‘1 came to light ’ ’ that the 12 questions contained in the January examination were identical with questions published in the 1962 issue of the “Police Yearbook”. The press release also indicated that the examiners who prepared the test had obtained the 12 questions from an unreleased police promotion examination given in California in 1959. Mr. Hoberman is quoted .therein as stating that unreleased test questions 1 ‘ are made available only to other testing organizations and are never released to the public.” The commission Chairman conceded that the “ Police Yearbook ” has been readily available in the New York area for several years and that it was possible that some candidates taking the January 18, 1969 test reviewed these 12 questions in that publication prior to the date of the written test.
In 'the affidavit submitted by Mr. Hoberman hereon it is now conceded that the afore-mentioned press release was inaccurate to the extent that questions which appeared in the California examination were not unreleased. In fact, it was pointed out the candidates participating in the examination in California were permitted to take the examination booklet with them at the conclusion of that examination. Although the candidates filing for the January examination received a suggested bibliography, as hereinbefore noted, the “Police Yearbook” in which the 12 disputed questions were contained was not one of the sources listed therein.
It is common knowledge that candidates for promotion within the ranks of civil service have a veritable plethora of published material from which to prepare for examinations. In addition to those provided by the agency in which they are employed, review books contain suggested test questions or sample test questions, many of which have appeared on previous examinations. There are also many schools whose primary function is to prepare employees for advancement in civil service. The *414 schools and publications are, of course, equally available ¡to all those sufficiently interested.
The petitioners allege that the January 18, 1969 test contained 27 questions which were included verbatim on prior examinations. These questions and answers are set out in full in the petition, and respondents’ answer concedes that previous examination questions are sometimes repeated, depending upon the changed circumstances and subsequent need, and that variations of some of the questions were used. Furthermore, petitioners state that .the regulations prior to 1964 permitted examinees to remove test booklets at the conclusion of examinations. There is no allegation that any of the petitioners participated in any fraud or collusion or had actual knowledge prior to the examination that the 12 questions on correct English usage would be included therein.
The respondents rely upon two cases .to sustain their action in canceling the January examination: In the Matter of Chironna v. Watson (304 N. Y. 255) and Mangan v. New York State Civ. Serv. Comm. (60 Misc 2d 481). In the Chironna case, after a promotion examination was held, an issue was raised to the effect that some of .the participants had available for their use during the examination a book containing some of the questions and answers which were actually part of the examination. In the Mangan case, some questions posed in an examination were identical to questions contained in an unreleased and stolen examination that had been previously prepared. In that case it was not possible to determine whether any of the candidates taking the examination had been privy to the contents .of the stolen examination.
Clearly, the facts in the stated cases are inapposite. In the instant case, the questions were contained in published texts which were equally available to all candidates, none of whom, it is' alleged, had prior knowledge of their use in this Captains examination. In fact, it has recently been held that the inclusion of questions used on previous examinations, even where some of those examined in the subsequent examination took the earlier examination, does not warrant the setting aside of such examination (Matter of Bruns v. Suffolk County Civ. Serv. Comm., 56 Misc 2d 925).
It is clear that the function of the Civil Service Commission in fixing standards for testing is subject to judicial review in the event of a clear showing that its action was arbitrary, capricious or unreasonable (Matter of Cowen v. Reavy, 283 N. Y. 232; People ex rel. Sweeney v. Rice, 279 N. Y. 70, 73; *415 Matter of Andresen v. Rice, 277 N. Y. 271; Matter of Young v. Trussel, 42 Misc 2d 108).
The Constitution requires that appointment and promotion in the civil service “ shall he made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ” (N. Y. Const., art. V, § 6). “In this statement of public policy and in the statutes enacted .to make it effective the emphasis is upon the element of competition.” (Matter of Cowen v. Reavy, supra.) “ The test is not merely examination. The test is competitive examination.” (Matter of Barthelmess v. Cukor, 231 N. Y. 435, 445.)
A civil service examination, to be competitive, must employ an objective standard or measure which is capable of being challenged and reviewed by other examiners of equal ability and experience (Matter of Young v. Trussel, supra; Matter of Fink v. Finegan, 270 N. Y. 356, 361-363).
The viability of respondents’ position must rest upon its ability to sustain its argument that the examination was not competitive. In the present case, the respondents acted arbitrarily in canceling the January 18 examination and scheduling a new test in place thereof. Respondents have failed to advance any substantial issue as to the “ practicability ” of the examination or its sufficiency as a test of capacity and fitness for the position of Captain. On the contrary, the commission itself argues that the 12 disputed questions were practical as a test of fitness and merit for promotion to the rank of Police Captain in the various departments. Nor may the Civil Service Commission cancel an examination absent a showing that it was obviously inadequate or completely unrelated to the duties of the position as to be, on its face, a nullity (see Matter of Ebling v. New York State Civ. Serv. Comm., 305 N. Y. 221, 226).
The essential ingredient of civil service examinations, that of competitiveness, is, as hereinabove noted, embodied not alone in case law, but in the New York State Constitution. That element was neither compromised nor impaired in any way by the inclusion of the 12 questions on the January 18 test. Indeed, proof of this fact, ironically enough, is found in respondents’ answer, where it is conceded ‘ ‘ that previous examination questions are sometimes repeated * * * and that variations of some of the questions were used. ’ ’ To extend the respondents ’ rationale ¡to its ultimate conclusion would, I fear, imperil the positions and status of a vast majority of the civil servants in New York City. Finally, the individual efforts of the petitioners *416 should not be cavalierly disregarded absent proof that the objective of providing open and fair' competitive examinations has not been met.
The petition is granted. The action of respondents in canceling the January 18, 1969 examination is declared null and void. Said examination is hereby declared valid, and respondents are enjoined from conducting the examination scheduled for May 24, 1969, for Captain in the afore-mentioned agencies. The respondents are directed to grade the examination papers for the January 18, 1969 test and to thereafter release the results of said examination.
In Matter of Elliott v. Hoberman: “ application granted. See my opinion in Matter of Katz v. Hoberman, above. ’ ’