Maxwell Shapiro, J.
This holdover proceeding against the physician tenant is grounded upon the recent ruling that a *396 doctor’s office, maintained at street level, in an apartment house, is a store (under Business Bent Law, § 8, subd. [gg], par. [1], as enacted on April 17, 1956, by L. 1956, ch. 735).[1] (Sterling v. Lapidus, 17 Misc 2d 587, affd. without opinion Appellate Term, 1st Dept., N. Y. L. J., June 5,1959, p. 13, col. 1, motion for leave to appeal to Appellate Division granted 9 A D 2d 642.)
This ruling at once is at odds with our every-day experience. For decades thousand of doctors in New York City have had their offices on street level floors of apartment buildings. Was it the intent of the Legislature to consider these offices, with their treatment rooms and patient waiting rooms as stores? Was it intended that doctor’s offices at street level were to be decontrolled, while those above street level were not to be? Why did the Legislature, having provided a separate definition for “office” space, limit section 8 (subd. [gg], par. [1]) to “ store ” space? If the Legislature intended to include offices at street level, could it not have easily done so by simply stating that paragraph (1) of subdivision (gg) shall apply to all business space[2] at street level?
*397 These are but a few of the challenging questions generated by the Lapidus holding. Nowhere in this statute has the Legislature directed that a doctor’s office on street level ipso facto becomes a store. The rule of the Lapidus case is at variance with what we plainly see in our daily life — is it not likely also to be at variance with the intent of the Legislature when it enacted section 8 (subd. [gg], par. [1]) 1 Unless otherwise compelled to do so, this court cannot blindly accept a ruling so inconsistent with reality.
In general, this court is duty bound to follow the decisions of higher courts. But, stare decisis is a principle of guidance, not “ a contrivance to hamper the judge in administering justice ” (Von Moschzisker — Stare Decisis in Courts of Last Resort, 37 Harv. L. Rev. 409, 410). Its force is not mechanical or automatic ; to the contrary, it is a “ moral obligation only ” — where the law has been misunderstood or misapplied, or contrary to reason, stare decisis does not inhibit correction. (People ex rel. Rice v. Graves, 242 App. Div. 128, 135, affd. 270 N. Y. 498, cert. denied 298 U. S. 683). Particularly, in construing novel legislation, analysis and reason are the guides; demonstrable error is not to be perpetuated by strict adherence to an earlier decision. (Matter of Cameron v. Ellis Constr. Co., 252 N. Y. 394, 399.) Litigants can still challenge the correctness of a prior decision between other parties even though the prior determination would indicate a similar conclusion. (Sears, Roebuck & Co. v. 9th Ave. — 31 St. Corp., 274 N. Y. 388, 400.) Moreover, affirmance here by the Appellate Term without opinion meant only a concurrence in result without necessarily adopting the reasoning below. (Scott & Co. v. Scott, 186 App. Div. 518, 525.) Thus, even apart from the conclusive significance of pending-review by the Appellate Division (Montrose v. Baggott, 161 App. Div. 494, 501), this court not only can but should render decision as it finds the law to be.
•Section 8 (subd. [gg], par. [1]) by express language is confined to stores. Certainly a store is within everyone’s knowledge — it would indeed be difficult to find a laymen who could not point out a store and detail its characteristics accurately and without hesitation. To an ordinary person a doctor’s office is not a store, whether the office is at street level or elsewhere. The basic character of a store is a place where people shop — the kind of place where the general public is invited to buy goods or services. For purposes of the emergency business and commercial rent statutes, the Legislature has grafted on the requirement that such place be at street floor or level. But by so doing, it does not follow that the Legislature made all business space at street level store space.
*398 It is difficult to conceive of a doctor’s office, such as appears in landlord’s Exhibit 5, as a place where people shop for medical treatment. Upon the trial, the evidence showed that Dr. Beder’s office is at 470 Park Avenue (southwest corner of 58th St. and Park Ave.) in a 14-story apartment house building, containing 57 apartments. Its windows and single-door entrance are curtained with Venetian blinds. Except for the three small bronze doctor’s name plaques at the side of the entrance door, the exterior appearance of the subject premises is that of another apartment in the building. Certainly, these plaques, bearing but the names of the doctors, and no more, could hardly be an invitation to the public to enter and shop for medical services. Their purpose is no different from the usual name plate at the entrance door of an apartment.
Solely on the authority of Lapidus, landlord demands that this court find these premises, though possessed of the foregoing-characteristics, to be a store under section 8 (subd. [gg], par. [1]). This court does not find within the statute that compulsion which led to the Lapidus ruling; nor does it accept the reasoning there expressed.
The Legislature set out separate definitions for a “ store ” and for an “ office ”. A store is: “ Any space predominantly used or occupied by a tenant for the sale of personal property or the rendition of services in the ordinary course of business, provided that such rental space shall also include space for the conduct of such business on the street floor or level. ’ ’ (Italics supplied; Commercial Eent Law, § 2, subd. [c].) An office is: ‘ ‘ Any space used or occupied under a lease or rental agreement as a separate business unit in any building which space is predominantly used or occupied for other than commercial purposes.” (Italics supplied; Business Eent Law, § 2, subd. [d].)
Striking differences in these definitions come to the fore and their rationale becomes apparent.
1. A store is limited in location.
A store must include space on the street floor level, while
An office is any space in any building whether on street level or elsewhere.
2. A store is limited in function.
It is space 1‘ predominantly used * * * for the sale of personal property or the rendition of services in the ordinary course of business,” while
An office is “ predominantly used or occupied for other than commercial purposes
*399 The Legislature, in defining “ office ” vis-a-vis “ store ”, set out a broad concept of office space — that is, space where everything can be done anywhere in a building other than ‘ ‘ The manufacture, sale, resale, processing, reprocessing, displaying, storing, handling, garaging, or distribution of personal property ”. (Definition of “Commercial purposes ”; Commercial Rent Law, § 2, subd. [b].) The Legislature saw fit to limit this broad scope in only one vital respect. An office cannot be space devoted to the sale of personal property, while a store is “predominantly” so devoted. Linking together in specific definition of “ store ” the sale of property and the rendition of services in the ordinary course of business, points up the sense in which the Legislature used the latter phrase. To be “ store ” space such services must be rendered, in the “ ordinary course of business” at street or floor level. To be “office” space, the services can be of any kind other than those coming within the definition of commercial purposes, and they may be rendered anywhere in the building including on street or floor level.
Certainly, personal property can be sold and services in the ordinary course of business rendered in building space other than on street floor or level. Yet, even though so rendered, such space has been held not to be “ store ” space. (Margana Realty Corp. v. Ellis, 8 Misc 2d 894; 6 East 53rd St. Corp. v. Olin, 201 Misc. 218.)
By limiting so carefully “store” space to street floor or level, the Legislature obviously was covering that type of business activity which solicits and invites the general public traveling and walking in front of the premises to come in and shop. In my view, this is the center point of the definition of “ store ” — and the reason for the limitation by the Legislature of section 8 (subd. [gg], par. [1]) to stores.
Barbering, shoemaking and other like services are commonly rendered in the ordinary course of business in stores. The public normally and in everyday life shop for services of this type in stores. Services for which people usually shop fall naturally and without perplexity and confusion, within the statutory definition of ‘ ‘ store ’ ’ — and are compatible with the first part of the definition — the sale of personal property.
Although the rationale in Lapidus is that professional medical services are rendered in the ordinary course of business, this court does not view that this is the turning point of decision. If the Legislature intended that section 8 (subd. [gg], par. [1]) should cover offices as well as stores that are on street level, it could have so provided simply by stating that the section shall *400 apply to all business space at street level, for business space is conceived to be either store space or office space. (Report of New York State Temporary Commission to Study Rents and Rental Conditions, N. Y. Legis. Doc., 1956, No. 57, p. 9.) In construing statutes, the court must not depart from everyday common experience and knowledge. It must not assume that the Legislature in enacting this section acted in a vacuum without regard to “‘the pooled general knowledge ’ of the legislators themselves (East New York Sav. Bank v. Hahn, 326 U. S. 230, 234, supra).” (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 418.)
In Lapidus the court resolved any technical overlap in definition by holding that a doctor’s office at street level, ipso facto, is a “store”. Even if the statute were susceptible of two possible constructions, the one adopted in Lapidus is artificial and harsh, and was not required.
Early judicial contact with emergency rent legislation, led the Court of Appeals (Kauffman & Sons Saddlery Co. v. Miller, 298 N. Y. 38, 43 [1948]), when faced with a choice of construction between “ A strict and literal reading of statutory language ” and one reflecting “ the reason of the statute ” and “ the dictates of good sense and common fairness (p. 44) to lay down this cardinal rule: “ We find no such unreasonable and impossible choice dictated by the scheme of the statute and reject an interpretation of its words which would so clearly offend against common sense. Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results. (See People v. Ryan, 274 N. Y. 149, 152; Matter of Emerson v. Buck, 230 N. Y. 380, 388; People ex rel. Municipal Gas Co. v. Public Service Comm., 224 N. Y. 156, 165; Matter of Meyer, 209 N. Y. 386, 389.) ” See, also, Matter of Ebling v. New York State Civil Serv. Comm., 305 N. Y. 221, 227; J. & S. Operating Corp. v. Swire Appliance Co., 192 Misc. 713, 717.)
The State Temporary Commission to Study Rents and Rental Conditions in its reports refers to business space as being made up of stores and offices. (N. Y. Legis. Doc., 1956, No. 57, p. 9, supra.) But in discussing the then proposed amendment of section 8 by inserting new subdivision ([gg], par. [1]), the commission specifically referred to “ statutory store tenants ” (supra, p. 12; italics supplied) and commenting upon this, the commission said “ The amendment affecting store leases * * * will operate to reduce the comparatively small percentage of statutory tenancies in store space ”. (supra, p. 14; *401 italics supplied.) Here, again, we see the emphasis placed upon the word “ store ” and the sense in which the commission used that word. Certainly, the small percentage of statutory tenancies referred to by the commission could never have included the thousands of doctors who maintain their offices at street level or floor in apartment houses.
Sudden termination by judicial construction no less, of thousands of doctor’s tenancies might well result in an emergency of acute and disastrous proportions. The commission in 1959, when it proposed re-enactment of paragraph (1) of subdivision (gg) was specific in cautioning that its recommendations should lead only to gradual decontrol. It specifically cautioned against decontrol which would create disruption and inequity. (N. Y. Legis. Doc., 1959, No. 45, pp. 24-26; see East New York Sav. Bank v. Hahn, 326 U. S. 230, 235.)
This court, therefore, concludes that the Legislature intended and meant to confine section 8 (subd. [gg], par. [1]) to stores in the generally accepted sense as places which invite the general public to come in and shop and where usually people do shop, for goods or for services.
In Lapidus, the court makes reference to the fact that it has observed lawyers’ offices and other professional offices maintained in stores and that the Legislature could not have intended to exclude from paragraph (1) of subdivision (gg) store space being used by such professional people as offices. This illustration assumes the very point in issue because by the court’s own hypothesis the occupied space is store space. In such situations, the offices are in places possessing all the known and commonly accepted physical characteristics of a store, and no doubt this was the basis for the court’s comment.
Yet, surprisingly, in Lapidus, the court took the view “ that the physical aspect of the premises is not the test as to what constitutes a store ”. (Sterling v. Lapidus, supra, p. 590.) It did so relying upon Washington Refrigeration Corp. v. Benhermaso Corp. (285 App. Div. 732, affd. 1 N Y 2d 683) and Bauer v. Bar Garage Corp. (204 Misc. 640). But neither of these cases is authority for a rule that the physical aspect of the premises is to be ignored. Although the physical aspect of the premises may not be the sole test, it, nevertheless, is of importance. (Levine v. Brooklyn Cornell Utilities, 185 Misc. 581, 583.) There are certain physical characteristics of a store that distinguish it from every other kind of facility, regardless of the activity carried on within it, for example the many small religious congregations in New York City which carry on their activities in stores.
*402 This court therefore concludes that the physical aspect of the premises is of importance and must be considered. Certainly the physical aspect of the subject premises is as far removed from resembling a store as anything could be. Although stores need not always take on the customary appearance of windows where there is a public display of merchandise or services, the doctor’s office here possesses none of the physical aspects of a store. In addition to not having the physical appearance of a store, it is also not a place where the general public is invited and solicited to shop for the professional medical services rendered therein.
Under all these circumstances, this court concludes that the subject premises is not a store within the intent and meaning of section 8 (subd. [gg], par. [1]).
In light of this ruling, the other grounds asserted by the tenant need not be considered. Petition is dismissed.

. Section 8 (subd. [gg], par. [1]) provides as follows:
“ So long as the tenant continues to pay the rent * * * under the provisions of this act, no tenant shall be removed from any business space * * * unless: * * *
“ (gg) (1) The landlord on or after June first, nineteen hundred fifty-six, offers to enter into a lease with a tenant in possession of a store under an expired lease or tenancy or as a monthly or statutory tenant for a term to commence on the first day of the month next succeeding the twentieth day after the mailing of such offer as hereinafter provided and to expire on June thirtieth, nineteen hundred fifty-eight, at a rental in the same amount as the emergency rent with respect to the store occupied by the tenant and otherwise on substantially similar terms and conditions as existing with respect to such tenancy not inconsistent with any of the provisions of this act, and such offer is transmitted by the landlord to the tenant by registered mail, and such tenant fails, neglects or refuses to execute such lease within such period of twenty days, and a further period of six months elapses subsequent to such failure, neglect or refusal of the tenant;”.

. Business Rent Law (§ 2; L. 1945-, eh. 314) :
“‘Business space.’ All rental space in any city other than: (1) commercial space as defined in chapter three of the laws of nineteen hundred forty-five, or any act amendatory thereof; * * * ”
Commercial Rent Law (§ 2; L. 1945; ch. 3, as amd. by L. 1952, ch. 416] : “ ‘ Commercial space.’ Any space, including space used as a parking lot for motor vehicles, used or occupied for commercial purposes in any city other than space used’ or occupied as a store or office.
“ (b) ‘ Commercial purposes.’ The manufacture, sale, resale, processing, reprocessing, displaying, storing, handling, garaging or distribution of personal property.”