ROBERT D. STERLING, Respondent, *v.* PAUL LAPIDUS, Appellant.

First Department, March 22, 1960.

*Louis Okin* of counsel (*Sohn & Okin*, attorneys), for appellant.

*George Brussel, Jr.,* of counsel (*Edward Labaton* with him on the brief; *Rosston, Hort & Brussel,* attorneys), for respondent.

*Reed B. Dawson* for the Medical Society of the County of New York, *amicus curiæ.*

*Barry Golomb* for Bronx County Medical Society, *amicus curiæ.*

M. M. FRANK, J. This is an appeal by the tenant from the affirmance by the Appellate Term of a final order granted to the landlord in a holdover proceeding. Before discussing the problem presented we wish to express our appreciation for the assistance given this court by the parties submitting briefs, including *amici curiæ.*

We are called upon to decide whether, under the applicable Business Rent Law (L. 1945, ch. 314, as amd.), the space occupied by a physician on the street floor of a building is to be classified as a store. If it is, we must affirm; if it is not, the final order must be reversed and the petition dismissed. There are no disputed questions of fact. The parties submitted the issue to the Municipal Court on an agreed statement of facts so that only a question of law was to be determined.

The tenant, Paul Lapidus, a doctor of medicine, occupies premises on the street floor of an apartment house known as 1133 Park Avenue, designated as a Class A multiple dwelling in a residence use district. The tenant has been in possession for at least 13 years, and last executed a lease for the premises on or about October 1, 1946 for a term of one year expiring on September 30, 1947. Since then his occupancy has been that of a statutory tenant. Dr. Lapidus has never resided in the premises which, during his tenancy, have not been altered or modified for use as a physician's office. It is a fair inference, therefore, that the space let to Dr. Lapidus was occupied or designed for professional use before he took possession. Although the lease is not a part of the record, the only permissible conclusion is that, by its terms, the tenant was granted the right to occupy the premises for the practice of his profession. There is nothing in the record from which a conclusion would be justified that the landlord ever treated the space as a store. Access to the office is through the main lobby of the

building, and no means of direct entrance from or exit to the street is provided. In the Municipal Court and in the Appellate Term, the landlord successfully asserted that the premises constitute a store within the meaning of and subject to the Business Rent Law (§ 8, subd. [gg], par. [1]). Acting on the assumption that the section applied, the landlord, on or about February 28, 1958, offered to enter into a lease with the tenant for a three-month term to commence April 1, 1958. Taking the position that the statute was inapplicable, the tenant refused to execute the proffered lease within 20 days after its tender. Thereafter, six months were permitted to elapse, and then, upon a petition alleging that the tenant was a holdover, a precept, dated December 15, 1958, was issued by the Clerk of the Municipal Court. The obvious purpose of the tender of the lease and the subsequent steps taken by the landlord was to accomplish decontrol, permissible of course, if the premises are deemed to be a store as defined by the rent control laws.

The landlord argues, and the Municipal Court upheld his contention, that Dr. Lapidus occupies a store because the premises are located on the street floor and he renders services in the ordinary course of business. A store is generally understood to be an establishment at street level which purveys merchandise for consumption, use, or adornment, ranging from doughnuts to diamonds, or renders services which run the gamut of needs from shoe shines to automobile repairs. Webster (New International Dictionary [2d ed.]) defines a store as '' 8. Any place where goods are kept for sale, whether by wholesale or retail; a shop.'' That definition has been generally accepted by legal lexicographers, and by the courts in numerous decisions. (See Ballentine, Law Dictionary [2d ed.]; Black, Law Dictionary [4th ed.]; 40 Words and Phrases, p. 219 and cases cited; *Levine* v. *Brooklyn Cornell Utilities,* 185 Misc. 581.)

Broadly speaking and without reference to a specific provision of statutory law, we cannot accept a general definition that classifies members of the learned profession of medicine as engaging in '' the sale of personal property or the rendition of services in the ordinary course of business,'' or commerce. (Commercial Rent Law, § 2, subd. [c]; Business Rent Law, § 2, subd. [l].) Assuming the propriety of that classification when barbers were united with the company of surgeons by an act of Parliament (32 Henry VIII, ch. 42), with the former confined to blood-letting and extraction of teeth, it became inappropriate after 1745, when Parliament (18 George II, ch. 15) severed the craft of barbering from the profession of surgery and gave the latter the status it still enjoys.

The term store, in the natural and common acceptance of the term, is not applied to space occupied by a physician. Certainly long before the enactment of the business and the commercial rent laws, one did not seek medical treatment by entering store premises. For example, it is scarcely imaginable that Mr. Sterling, the landlord, ever said that he had gone to Dr. Lapidus' store for a medical examination. In modern times doctors usually maintain offices located either in private houses in which they reside; in multi-family structures, usually but not exclusively on the ground floors; or in office buildings, some wholly devoted to medical practitioners. It must be assumed that, in enacting the rent control statutes pertaining to stores, the Legislature was fully aware of this general custom. Therefore, by established principles of statutory interpretation, the words used in legislative enactments must be given their ordinary meaning, unless the Legislature by definition or from the rest of the context of a statute provides a special meaning (see McCaffrey, Statutory Construction, § 31, p. 61).

The Legislature has defined a " store " in both the Commercial Rent Law (§ 2, subd. [c] and the Business Rent Law (§ 2, subd. [1]) as: " Any space *predominantly* used or occupied by a tenant for the sale of personal property or the rendition of services in the ordinary course of business, provided that such rental space shall also include space for the conduct of such business on the street floor or level." (Italics supplied; L. 1945, ch. 3, as amd. by L. 1954, ch. 446; L. 1945, ch. 314, as amd. by L. 1954, ch. 447.)

Although the Business Rent Law includes provisions referable to office space, no specific legislative definition pertaining to such areas is supplied. However, the Commercial Rent Law in addition to restating the definition of " store " (§ 2, subd. [c]) contained in the Business Rent Law, classifies " office " as: " *Any space* used or occupied under a lease or rental agreement as a separate business unit in any building which space is *predominantly used or occupied for other* than commercial purposes." (Italics supplied; § 2, subd. [d].)

The marked differences between the definitions of store and of office are significant and a comparison may help to clarify the legislative intent. A store must encompass space at street level, whereas an office is space located in any part of a building. If we were to assume that space occupied by a doctor on the ground floor of a building should be classified as a store (as determined by the Municipal Court in this proceeding), it follows that space other than on the ground floor, similarly occupied, would be subject to different regulatory control. In

the absence of a specific declaration to that effect, we are loath to believe that the framers of the rent laws intended such an incongruous result.

There are other indicia of legislative intention. Throughout both the commercial and the business space rent laws, the statutory scheme is to segregate store from office and commercial space. With regard to a store, the Legislature appears to have been satisfied to define it as it is generally referred to and understood by the public in common parlance. Elsewhere in the law, where a special meaning was intended, the Legislature carefully applied words of art to characterize the term. Thus under the Commercial Rent Law (§ 8, subd. [k]) and the Business Rent Law (§ 8, subd. [k]), a store was specifically defined as space " * * * at street level and two floors above and below street level or any part thereof, provided it includes space at street level * * *."

By a parity of reasoning, had the Legislature intended that all office space at street level, including that used by doctors and others in the learned professions, be treated as store space, it would have so stated in clear language. It is noteworthy that there is not the slightest suggestion of such a purpose in any of the annual reports of the Temporary State Commission to Study Rents and Rental Conditions. Instead, the Legislature continued to maintain and reaffirm the separate categories, definitions, and treatment of commercial, business, and store space. Although store space is identically defined in both the business and the commercial space laws, the Legislature continued to treat it under separate headings in each. Moreover, the intention to differentiate store from business and commercial space may be found in the successive amendments designed to achieve gradual decontrol. Whereas the requirements for decontrol of store space (Business Rent Law, § 8, subd. [gg], par. [1] and Commercial Rent Law, § 8, subd. [gg], par. [1]) remain fairly constant and without regard to the emergency rent, those subdivisions dealing with business and commercial space (Business Rent Law, § 8, subd. [gg], par. [2] and Commercial Rent Law, § 8, subd. [gg], par. [2]) provide that space, *other than a store,* is subject to decontrol only if the emergency rent is above a fixed annual minimum.* The distinction thus made was obviously predicated upon a legislative finding that

---

* The original amendments in 1956 of paragraph (2) of subdivision (gg) required a minimum annual emergency rent of $20,000. That amount was reduced by successive amendments so that at the time of the commencement of this proceeding it was $7,500; and now it is fixed at $5,000. (L. 1956, chs. 735, 736; L. 1958, chs. 886, 887; L. 1959, chs. 808, 809.)

store space and office space could not be one and the same thing, and that the need for the former was less acute than the demand for the latter.

We are told that "The basic purpose of the emergency rent legislation was to protect tenants * * * by preventing widespread evictions while the emergency created by the wartime shortage of space continued. * * * Accordingly, consonant with settled canons of construction, the statutory language must be interpreted to effectuate that purpose." (*Morse & Grossman* v. *Acker & Co.*, 297 N. Y. 304, 310.)

The construction urged upon us by the landlord finds no support in the corrective thrust of the statute (*Kauffman & Sons Saddlery Co.* v. *Miller*, 298 N. Y. 38, 44). The words used by Judge FULD in *Kauffman* are particularly appropriate: "We find no such unreasonable and impossible choice dictated by the scheme of the statute and reject an interpretation of its words which would so clearly offend against common sense. Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results." Here, too, it is fairly inferable that the Temporary State Commission to Study Rents and Rental Conditions did not envisage the inclusion of doctors' offices or office space when it referred to "statutory store tenants" in its 1956 report (N. Y. Legis. Doc. No. 57, p. 12) urging the enactment of paragraph (1) of subdivision (gg) of section 8. It was concerned with the decontrol of stores as the term is ordinarily understood. No subsequent statute compels or warrants a broader or different connotation.

The parties agreed in their statement of facts that the tenant's premises are in a Class A multiple dwelling located in a residence use district. Under the zoning ordinances of the City of New York (art. II, §§ 2, 3) no building or premises may be erected or *used* for any purpose other than as permitted in the use district. With certain exceptions which include nonprofit activities, no business or commercial enterprises may be conducted in dwellings located in a residence district. Obviously, the prohibition embraces stores. In multiple dwellings within a residence district (art. II, § 3, subd. [6], par. [b]) "doctor's offices * * * shall be permitted only as follows: (1) on the street floor thereof * * *."

Thus, under the zoning laws of the city, in areas where stores are prohibited, space occupied by physicians for professional use and located on the ground floors of Class A dwellings is not only authorized, but is recognized and classified as "offices."

It is of more than passing significance, that for all the years that Dr. Lapidus has occupied the premises, no question has ever been raised that his office is a store maintained in violation of the zoning regulation. Nor has our attention been directed to a single instance among the thousands of physicians' offices similarly situated, where a charge has been made or sustained that occupancy is in violation of the. proscriptions against conducting a business. It is appropriate to assume that, in enacting the rent laws, the Legislature, although not bound by the terms used in the local ordinance, was aware of them. Moreover, it saw no reason to mandate a definition of office different from that contained in the commercial rent laws, or one at variance with the ordinance.

Generally a store is space on the street floor predominantly used for the sale of personal property with windows for the display of wares, "the kind of place where the general public is invited to buy goods or services". (See *Park-58 Corporation* v. *Reder, etc.,* 21 Misc 2d 395, 397.) From the brief description heretofore given, the office occupied by Dr. Lapidus has none of the physical attributes of a store. Therefore, while it is unnecessary to define store with greater exactitude in order to reach a decision, we cannot wholly agree with the learned Justice of the Municipal Court who, in his opinion in this case, said, "that the physical aspect of the premises is not the test as to what constitutes a store under the definitions, but rather it is the location and use thereof by the tenant." (17 Misc 2d 587, 590.) We assume that "physical aspect" connotes, among other things, structural design, exterior facade, interior arrangement, and installations. If that is so, then certainly the physical aspect of the space must be considered, as was done by this court in *Washington Refrigeration Corp.* v. *Benhermax Corp.* (285 App. Div. 732, affd. 1 N Y 2d 683), where a conveyor and refrigerated space were held to be inseparable portions of store premises. If, by agreement between a landlord and a tenant, ground floor premises are remodeled or reconstructed so as to remove plate-glass windows, entrances and other appurtenances commonly associated with a store, and they are then used for purposes other than business or commerce, one would scarcely continue to refer to the space as a store.

We do not share the grave concern of the Municipal Court that if the premises in question are not classified as a store they will, a fortiori, not be subject to the protection of the rent laws. The space is used and occupied as an office and there is provision in the rent laws covering such premises.

To classify all physicians' offices as stores, merely because they are located on street level, would subvert the purpose of the rent laws and produce a harsh and unjust result never intended by the Legislature. Were we to conclude that doctors' offices on street level are subject to decontrol because they are stores, we would subject that class of tenants to unconscionable demands for exorbitant rents under penalty of eviction.

It must be held that the statutory construction urged by the landlord and adopted in the Municipal Court is burdensome, inequitable and erroneous, and would circumvent the purpose of the emergency rent laws to prevent " [u]njust, unreasonable and oppressive leases and agreements for the payment of rent * * *." (Business Rent Law, § 1; L. 1945, ch. 314, § 1; Commercial Rent Law, § 1; L. 1945, ch. 3, § 1.)

Accordingly, the determination of the Appellate Term and the Municipal Court holding that the premises involved herein are store space should be reversed, on the law, with costs to the appellant in all courts, and a final order should be granted dismissing the summary proceeding.

RABIN, P. J., VALENTE, McNALLY and STEVENS, JJ., concur.

Determination of the Appellate Term and the final order of the Municipal Court holding that the premises involved are store space reversed, on the law, with costs to the appellant in all courts, and a final order directed to be entered in favor of the tenant, dismissing the petition, with costs.

### APPENDIX.

L. 1956, ch. 735, eff. April 17, 1956 reads in part as follows:

" § 2. Section eight of such law is hereby amended by inserting therein a new subdivision, to be subdivision (gg), to read as follows:

" (gg) (1) The landlord on or after June first, nineteen hundred fifty-six, offers to enter into a lease with a tenant in possession of a store under an expired lease or tenancy or as a monthly or statutory tenant for a term to commence on the first day of the month next succeeding the twentieth day after the mailing of such offer as hereinafter provided and to expire on June thirtieth, nineteen hundred fifty-eight, at a rental in the same amount as the emergency rent with respect to the store occupied by the tenant and otherwise on substantially similar terms and conditions as existing with respect to such tenancy not inconsistent with any of the provisions of this act, and such offer is transmitted by the landlord to the tenant by registered mail, and such tenant fails, neglects or refuses to execute such lease within such period of twenty days, and a further period of six months elapses subsequent to such failure, neglect or refusal of the tenant; or "

L. 1958, ch. 886, eff. April 20, 1958 reads in part as follows:

" § 3. Paragraph two of subdivision (gg) of section eight of such law, as last amended by chapter four hundred fifty-two of the laws of nineteen hundred fifty-seven, is hereby amended to read as follows:

188

" (2) The landlord on or after June first, nineteen hundred fifty-eight offers to enter into a lease with a tenant in possession of any business space with respect to which the emergency rent is seventy-five hundred dollars or more per year, other than a store, under an expired lease or tenancy or as a monthly or statutory tenant, for a term of at least two years to commence on the first day of the month next succeeding the twentieth day after the mailing of such offer as hereinafter provided, except that in the case of any lease expiring on and after July first, nineteen hundred and fifty-eight, the lease so offered shall also be for a term of at least two years commencing on the first day of the month next succeeding the twentieth day after the mailing of such offer at a rental in the same amount as the emergency rent with respect to the business space occupied by the tenant and otherwise on substantially similar terms and conditions as existing with respect to such tenancy not inconsistent with the provisions of this act, and such offer is transmitted by the landlord to the tenant by registered mail, and such tenant fails, neglects or refuses to execute such lease within such period of twenty days, and a further period of six months elapses subsequent to such failure, neglect or refusal of the tenant, by any such offer; or ".